## DWELLE & DANIEL *v.* BLACKSHEAR BANK *et al.*

A prospective purchaser at a sale of property, to be had under a power contained in a mortgage, is bound to inquire as to the terms and conditions upon which the person exercising the power is authorized to sell; and when the power of sale provides that the sale shall be had at public outcry for cash, all who bid at the sale do so with full knowledge that to complete the sale pay-

ment or tender of the final bid in cash is essential; and one, although the highest and best bidder at the time the property is knocked off, is not entitled to demand a conveyance unless the amount of his bid is duly tendered in cash, if not immediately after the property is knocked off to him, at least during the legal hours of sale on the day upon which the sale is had.

Submitted May 1, — Decided June 7, 1902.

Equitable petition.   Before Judge Bennet.   Ware superior court. November 18, 1901.

*Bennett & Bennett,* for plaintiffs.
*Leon A. Wilson* and *Estes & Walker,* for defendants.

Cobb, J.   Dwelle & Daniel filed in the superior court their petition against the Blackshear Bank and others, alleging substantially as follows: On the 6th day of January, 1896, J. F. Miles borrowed from the Blackshear Bank a sum of money and gave to the bank his promissory notes for the same, executing and delivering a mortgage upon certain described property to secure the payment of the notes.   On the 10th of March, 1898, Miles gave to plaintiffs his promissory notes for a stated sum, and executed and delivered to them a mortgage upon certain property to secure the payment of these notes, a portion of the property described in the mortgage being the same property as that described in the mortgage to the bank.   The bank had knowledge of the execution and delivery of the mortgage to the plaintiffs, and of the fact that it constituted a lien upon the same property as that described in its mortgage.   On the 22d day of November, 1898, after Miles had made default in the payment of his debt to the bank, the property described in the mortgage to it was exposed to sale, after having been advertised in the manner prescribed in the mortgage, and under a power of sale contained in the mortgage the bank, through its duly authorized agent, offered the property for sale at public outcry.   The power of sale contained in the mortgage provided that the sale should be had at public outcry "to the highest bidder for cash."   At this sale the plaintiffs, through their duly authorized agent, were the highest and best bidders, and the property was knocked off to them at the amount of their bid.   The agent of the plaintiffs tendered to the bank a draft on plaintiffs for the amount of the bid, which the bank refused to take, notwithstanding plaintiffs had wired it that the draft would be honored.   No cash was paid or tendered during the day on which the sale was

had, but thereafter the amount of the bid in cash was tendered to the bank and the tender was refused.　It is alleged that the agent of the Blackshear Bank who cried the sale agreed with the attorney of the plaintiffs to give them all the evening of the sale in which to raise the money and pay the bid, but that late in the afternoon a representative of the Blackshear Bank repaired to the courthouse and resold the property a short time before the expiration of the legal hours of sale.　A conveyance was subsequently made by the Blackshear Bank to the bidder at this sale, and conveyances were made by him to the bank and to the wife of Miles.　It is charged in the bill that this second sale was fraudulent and collusive, and that the conveyances made in pursuance of the same were void.　Plaintiffs aver that they are ready and have always been ready to pay the amount of their bid.　The prayers of the petition were, that the Blackshear Bank be compelled to make to petitioners a deed to the property upon the payment of the amount of their bid; that the deeds executed as a result of the second sale be delivered up to be canceled; that the plaintiffs have judgment for the damages which they have sustained, in the event a specific performance can not be decreed; and for process.　By an amendment it was alleged that the president of the Blackshear Bank stated to the agent of plaintiffs that he would have the second sale for the purpose of saving the expense of a readvertisement in the event plaintiffs failed to comply with their bid; that while the bidders were assembled at the time of the first sale, and before they had dispersed, the president of the bank approached the attorney of the plaintiffs and asked him how he would expect to pay his bid; that the attorney told him by draft on plaintiffs; that the sale had been then closed, the property knocked off to plaintiffs, and the bidders dispersed; that the second sale was had after the bidders had dispersed, and there was no person to bid for the property except the agent of the bank that it had sent there to bid on the property. The court sustained a general demurrer to the petition and dismissed the case, and to this ruling the plaintiffs excepted.

　　The power of sale contained in the mortgage to the Blackshear Bank restricted the authority of the bank to a sale for cash only. The plaintiffs as bidders at the sale were bound to inquire into the authority of the bank to sell, and the terms and conditions upon which the sale was to be had.　This authority appeared of record,

and the plaintiffs either knew or ought to have known that the bank could not sell upon any other terms than cash on the day of sale. Being charged with this notice, when they became bidders for the property, they well knew that no sale could be completed until the cash was either paid or tendered. The plaintiffs not having tendered the amount of their bid in cash either at the time of sale or during the legal hours of sale on the day the property was put up for sale, they have no right to come into a court of equity and pray for the specific performance of a contract of sale which was never completed on account of their failure to comply with the terms of sale. A draft on plaintiffs, even though it had been accepted by them, was not payment of their bid, and the bank had no authority either to accept the draft in payment or to give the plaintiffs until the next day to procure the cash. This being so,. there was never any completed contract of sale to the plaintiffs, and they had no right to demand a conveyance from the bank. As they acquired no right under the first sale to demand a conveyance of the property, and as their petition is predicated solely upon this supposed right, it is immaterial, so far as this case is concerned, whether the second sale was fraudulent and void or not. Even if it was void, this was no concern of the plaintiffs under their allegations. They pray simply that a conveyance be made to them of the property described in the mortgage to the bank, or that, in the event the bank is not in a position now to convey the property, they may have damages in lieu of a specific performance. The plaintiffs are not entitled to the relief prayed for. Those prayers which relate to the second sale are merely auxiliary to the main relief prayed for, which was specific performance. If the plaintiffs had been entitled to a specific performance, they might have been entitled to a cancellation of the deeds made as a result of the second sale. If the second sale was fraudulent and void, the plaintiffs may have some remedy in another proceeding to enforce their mortgage lien upon the property, but they are not entitled to a conveyance of the property as purchasers at the sale had at which they were bidders and failed to comply with their bid. The court did not err in sustaining a general demurrer to the petition.

*Judgment affirmed. All the Justices concurring, except Lewis, J., absent.*