DAVIS, receiver, *v.* WILLIAMS, receiver, *et al.*

1. The issue made by the pleadings and evidence considered, the assignment of error upon the judgment was sufficiently definite, and the motion to dismiss was without merit.

2. Under the evidence and the allegations in the petition admitted to be true, it was error to deny the application of the receiver appointed by the United States court, and to refuse the order as prayed, requiring the defendant to deliver the assets in controversy to the petitioner.

JANUARY 15, 1916.  REHEARING DENIED FEBRUARY 29, 1916.

Petition for delivery of possession.  Before Judge Thomas.  Colquitt superior court.  May 8, 1915.

J. S. Davis brought a petition setting up the following facts: On December 1, 1914, certain parties filed a petition in the United States District Court for the Southern District of Georgia against J. W. Coleman and Farmers and Merchants Warehouse Company, praying that they be declared a bankrupt, it being charged in that petition that Farmers and Merchants Warehouse Company was a trade-name used by J. W. Coleman, and that he was the sole proprietor thereof.  On the following day the petitioners in that case filed a petition praying that a receiver be appointed for Coleman and Farmers and Merchants Warehouse Company.  The judge of the United States court being absent from the district, the referee in bankruptcy passed an order requiring the defendants to show cause on December 4th (later requiring them to show cause on December 12th) why a receiver should not be appointed as prayed, and in the meantime restraining and enjoining them from changing the status of their assets until the further order of the court; and on December 12th, the judge still being absent from the district, the referee passed an order continuing of force the restraining order previously passed, and assigning a further hearing upon the application for the appointment of a receiver before the judge of the United States District Court for the Southern District of

Georgia, at the regular session of said court to be held in the month of January, 1915, or such other time as might be assigned by said judge. Coleman and Farmers and Merchants Warehouse Company were duly adjudicated a bankrupt, and Coleman filed his schedule in bankruptcy. The referee in bankruptcy passed an order, on January 7, 1915, appointing J. S. Davis as receiver in bankruptcy for Coleman and Farmers and Merchants Warehouse Company; and he thereupon took charge of such assets belonging to the bankrupt as were pointed out and delivered to him. Coleman was possessed of three policies of fire insurance of the value of forty-five hundred dollars each (naming them), and they were in his possession, custody, and control on December 4, 1914, when he appeared before R. J. Bacon, referee, upon a rule for him to show cause why a receiver should not be appointed. Coleman, trading under the name of Farmers and Merchants Warehouse Company, was conducting in the City of Moultrie the business of a warehouseman; he accepted cotton, hay, grain, and other property on storage, and charged therefor; for the purpose of affording protection to persons depositing goods with him for storage, he issued to such depositors certificates of insurance and charged therefor, and therein and thereby constituted himself an insurer against loss or damage by fire; and in order to protect himself against such liability he caused to be issued to Farmers and Merchants Warehouse Company, he being the sole proprietor thereof, the insurance policies mentioned. On October 27, 1914, the warehouse was destroyed by fire and all of the contents became a total loss, and thereby the policies of insurance became due and payable. On December 8, 1914, while the petition in the United States court was still pending, W. J. Perkins and others filed a petition in the superior court of Colquitt county against Coleman and Farmers and Merchants Warehouse Company, and prayed that a receiver be appointed to take charge of the policies of insurance mentioned; and upon said petition T. E. Williams and W. S. Stokes were appointed coreceivers. Later Stokes was relieved, and Williams is now the sole receiver of the superior court. It is alleged that immediately upon the appointment of this receiver Coleman delivered to him the policies of insurance, notwithstanding the fact that the United States court had already taken jurisdiction of the person and property of Coleman and Farmers and

Merchants Warehouse Company, and had passed an order restraining and enjoining them from changing or altering the status of their property and assets. On December 12, 1914, Coleman appeared before the referee in bankruptcy, who passed an order continuing the restraining order referred to, and assigning a further hearing before the judge of the United States court in January, 1915; but on January 7, 1915, it being made to appear to R. J. Bacon, referee, that it was expedient and necessary that a receiver be appointed to take charge of all the assets, he then and there passed an order appointing petitioner as such receiver, who thereupon took charge of all assets turned over to him. He has made demand upon Coleman, and upon Williams, receiver, for the policies of insurance; but delivery of them has been refused. The insurance companies stand ready to pay over the sum of $13,500 due under the policies, but are restrained and enjoined from doing so by both courts. The amount due by the insurance companies is part of the estate of J. W. Coleman, and is administrable by the United States court; the superior court is without jurisdiction in the matter; and it is essential that the money be collected and paid to those to whom it rightfully belongs. On March 3, 1915, the judge of the United States District Court for the Southern District of Georgia, in chambers, passed an order confirming the appointment of petitioner as receiver by the referee in bankruptcy, and directing that petitioner "make respectful application, as such receiver, to the Hon. W. E. Thomas, Judge of the Superior Court of Colquitt County, Georgia, for an order to W. S. Stokes and T. E. Williams, receivers, requiring them to deliver to Joseph S. Davis, as United States marshal and receiver, the policies of insurance mentioned herein or the proceeds of the same;" and "that the said Joseph S. Davis be authorized to take such action as may be necessary to carry this order into effect." Petitioner prays that the judge of the superior court pass an order directed to T. E. Williams, receiver in the case of Perkins et al. v. Coleman et al., and to the plaintiffs therein, requiring them to show cause why the prayers of this petition should not be granted, and that on the hearing the judge will direct the said Williams to turn over and deliver to petitioner the policies of insurance referred to, and such other property as may have come into his hands, belonging to Coleman or to Farmers and Merchants Warehouse Company.

The defendants filed their answer, in which they denied that the insurance policies referred were for the benefit of Coleman or Farmers and Merchants Warehouse Company, but averred that they were issued for the sole purpose of protecting the cotton stored in the warehouse belonging to persons who had receipts marked "Insured," and that the injunction with regard to changing the status of the assets of Coleman and Farmers and Merchants Warehouse Company could not affect these policies, since they were not the assets of Coleman or of the warehouse company, and that the proceeds thereof, being a trust fund, never passed to the receiver or trustee of Coleman in the bankruptcy proceedings, but the same should be collected for the benefit of Perkins and those similarly situated. On the hearing a transcript of the evidence given by Coleman before the referee in bankruptcy was introduced, as follows: "I conducted my business under the name of Farmers and Merchants Warehouse Company. I was the sole member of that firm. I did a general storage business, though principally of cotton. . . For the storage of goods I charged various prices. Some cotton that was stored with me was insured; some was not. On October 27, 1914 [the date of the fire], there was five to six hundred bales of linters and thirty-six to thirty-eight hundred bales of cotton in the warehouse. The checking showed eight hundred and forty-nine bales of cotton insured. . . I am positive that there was insurance on eight hundred and twenty to eight hundred and twenty-five bales of cotton. My record showed the receipt, weight, and number of the bale, to whom issued, and charges for storage and insuring. Twenty-six thousand dollars was the approximate value of the 825 bales of cotton upon which I had issued insurance receipts. To protect myself I had taken out $13,500 insurance, in regular insurance policies. . . I realized that I was liable to my creditors for $26,500. I realized that I was legally and morally liable. Realizing this liability, I procured insurance to protect my depositors of cotton in the warehouse. I am not sure that those policies were made payable to the Farmers and Merchants Warehouse Company. That was all the insurance I carried. Yes, I myself had thirty-three bales of cotton in the warehouse. Of approximately 3600 bales in the warehouse, only 820 bales were marked 'Insured.' When a bale of cotton was insured, the receipt would show 'Insured.' I took out insurance for those storing cot-

ton there. I did not mark any cotton 'Insured' unless I was asked to do so by the parties. depositing same." Coleman further testified by affidavit, on the hearing, that he had no interest whatever in the policies of insurance, and that all of the money derived from them, so far as he was concerned, would go to W. J. Perkins and others similarly situated, who hold warehouse receipts marked "Insured." The insurance policies were issued in favor of Farmers and Merchants Warehouse. Company, and it was stipulated therein that they covered "cotton in bales, of their own, or held by them in trust, or on commission, or on joint account with others, or sold but not delivered, while contained in Farmers and Merchants Warehouse."

The court denied the petition, and the plaintiff excepted.

*W. F. Way,* for plaintiff. *Shipp & Kline,* for defendant.

BECK, J. (After stating the foregoing facts.)

1. Motion was made to dismiss this case, on the ground that there is no sufficient assignment of error. The assignment of error is in the following language: After hearing the evidence in said case and the arguments of counsel, the judge "rendered a ruling and judgment denying the petition of the said Joseph S. Davis, petitioner; to which ruling and judgment the petitioner then and there excepted, now excepts, and assigns the same as error." Considering the nature of the petition and the issue made by it and the answer, this was a sufficient assignment of error. *Anderson* v. *Newton,* 123 *Ga.* 512 (51 S. E. 508). The motion to dismiss the writ of error is overruled.

2. We are of the opinion that the court erred in denying the application for an order requiring the receiver appointed by the State court to deliver the insurance policies in controversy to the applicant, the receiver of the United States court. It will be observed that the receiver appointed by the State court contends that he is entitled to have possession of and collect the insurance policies, on the ground that when these policies are collected the proceeds will be trust funds, and that they would have been trust funds had they been collected by the assured, Farmers and Merchants Warehouse Co., or by J. W. Coleman, who used the name of that company as a trade-name, he being the sole owner of the business, or, as he expressed it in his uncontroverted testimony, "the sole member of that firm." And he not only insists that the proceeds of this fund

41

would have been trust funds in the hands of Coleman if he had collected them, but that they would have been trust funds to pro- tect W. J. Perkins and others and parties "similarly situated as they are;" that is, all parties who were owners of cotton in the warehouse and holding receipts issued by the warehouse company, marked "Insured." Conceding that if Coleman had collected the policies the proceeds would have constituted a trust fund in his hands, it by no means follows that it would have been a trust fund solely for "Perkins and others similarly sitauted,"—that is, parties who held receipts issued by the warehouse company, marked "Insured." Merely marking upon a receipt given for cotton deposited in a warehouse the word "Insured" did not of itself constitute either a contract of insurance or a contract to insure the cotton. *Zorn* v. *Hannah*, 106 *Ga.* 61 (31 S. E. 797). But we do not pass upon this question here; we merely remark that it is a question involved in the case and one that can be settled in the court having jurisdiction when passing upon the priorities of the claims of all the parties.

But apparently, if the proceeds of the insurance policies are trust funds, they are such because of the clause in those instruments which stipulate that they cover "cotton in bales, of their own, or held by them in trust, or on commission, or on joint account with others, or sold but not delivered, while contained in Farmers and Merchants Warehouse;" but that clause is as much for the benefit of one class of holders of receipts for cotton deposited as for the members of that class which took receipts marked "Insured." The receiver of the State court, having been appointed upon the theory that the policies of insurance were issued for the sole purpose of protecting cotton stored in the warehouse and belonging to parties who held receipts marked "Insured," is asserting the claim of those parties; and his claim to the right to have possession of the policies of insurance and to collect them is based upon that theory—a theory which excludes owners of cotton stored in the warehouse but who do not hold receipts marked "Insured." But the receiver of the United States court was appointed by a court which had first taken jurisdiction of the bankrupt's estate; and he can administer the entire estate, the proceeds of the policies and any other estate that the bankrupt may have. We say he was appointed by a court which had first taken jurisdiction of the bankrupt's estate. We get this from the allegations in his petition, admitted by the answer of the

defendants. It is alleged in the petition, that on the first day of December, 1914, Boyd and others filed a petition in the United States District Court·for the Southern District of Georgia against Farmers and Merchants Warehouse Company and J. W. Coleman, praying that they be declared bankrupt. On the 2d day of December, 1914, Boyd and his coplaintiffs filed a petition in the United States court, praying that a receiver be appointed to take charge· of and hold all of the assets of every kind and character of J. W. Coleman and the Farmers and Merchants Warehouse Company, the latter being merely a trade-name used by J. W. Coleman, he being "the sole proprietor thereof." The United States judge of that division being absent, the same was certified to the referee in bankruptcy for that division; and he, on the date last stated, passed an order requiring Coleman to appear before him on December 4, 1914, and show cause why a receiver should not be appointed as prayed, and also at the same time restrained and enjoined both parties from changing or altering the status of their property and assets until the further order of the court. On the 4th day of December Coleman appeared before the referee in bankruptcy and moved for a continuance of the hearing of the application for receiver; and it was continued to the 12th day of December, 1914, the restraining order previously granted being continued in force. These insurance policies were then in the possession of Coleman, and rightfully in his possession; he had legal title to them. And whether or not the proceeds of the policies, when collected, could be impressed with a trust in favor of all the owners of cotton which was stored in the warehouse, or any one class of such owners of cotton, or whether the proceeds of the policies would be assets for the payment of creditors generally, the creditors moving in the bankrupt court had started proceedings in that court which caused it to first take jurisdiction of the entire estate of Coleman, a part of which was these policies; and they are asserting a right to the proceeds of the policies. And the mere fact that before the actual appointment of a receiver in the Federal court the State court had appointed a receiver, the defendant in error here, did not oust the Federal court of jurisdiction of the bankrupt's estate. And when Coleman, although restrained by the bankrupt court from altering the status of his assets, delivered the policies to the receiver of the State court, he did so wrongfully, as he violated the restraining

order just referred to. We are therefore of the opinion that the court below should not·have refused the petition of the United States court receiver for an order requiring the delivery by the State court receiver of the policies of insurance.

If there are any priorities among the claims upon the funds which shall arise from the collection of the policies, these priorities can be determined in the United States court; and if the funds are impressed with a trust in favor of owners of cotton stored in the warehouse, the beneficiaries of the trust can assert their right in that tribunal and have them allowed there.

*Judgment reversed. All the Justices concur, except Fish, C. J., absent, and Lumpkin and Atkinson, JJ., dissenting.*