(5 App. Div. 311.)

PEOPLE ex rel. MERZ UNIVERSAL EXTRACTOR & CONSTRUCTION
CO. v. WARING, Street Commissioner.

(Supreme Court, Appellate Division, First Department. May 25, 1896.)

STREET-CLEANING CONTRACT—POWERS OF STREET-CLEANING COMMISSIONER.

Laws 1882, c. 410 (Consolidation Act) § 209, provides that the terms
of all contracts for the collection of ashes and garbage shall, before
they are entered into, be approved by the board of estimate and appor-
tionment. Section 709 provides that the commissioner of street cleaning
shall have power to make contracts on certain conditions, and provides
that he shall advertise for proposals to perform the work "in such man-
ner and on such terms and conditions as he may prescribe." *Held*, that
the "terms and conditions" referred to in section 709 are merely those
which the commissioner thinks it necessary to put in the proposals, and
not the terms and conditions of the contract, but the terms and conditions
of the contract to be made must be approved by the board of estimate
and apportionment. Lynch v. Mayor, etc., 37 N. Y. Supp. 798, 2 App.
Div. 213, distinguished.

Appeal from special term, New York county.

Application by the Merz Universal Extractor & Construction
Company for a writ of mandamus to require George E. Waring, Jr.,
commissioner of street cleaning of the city of New York, to execute
a contract with relator for the disposal of garbage. The applica-
tion was denied, and relator appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY,
O'BRIEN, and INGRAHAM, JJ.

Elihu Root, for relator.

Joseph H. Choate, for respondent.

RUMSEY, J. This is an appeal from an order denying motion
for a writ of mandamus requiring the respondent to execute with
the relator a contract for the disposal of the garbage of the city of
New York. The facts are not disputed. It appears that the com-
missioner issued proposals asking for bids for the final disposition
of the garbage of the city. The relator, among others, made bids,
and the relator's bid was accepted by the commissioner. Upon the
report being made to the board of estimate and apportionment of
the acceptance of the bid, stating the price, the board of estimate
and apportionment declined to approve of the contract which was
about to be entered into by the commissioner, and thereupon the
relator was advised that its bid had been rejected, and that the
money which had been deposited would be returned to it. After
some further proceedings with regard to the matter which need not
be referred to here more particularly, the relator made this appli-
cation to the court that the street-cleaning commissioner be required
to execute with it a contract for the disposition of the garbage in
accordance with the terms and conditions of the proposals which
had been made by the commissioner, and for the price offered by the
relator, and which was accepted by the commissioner.

The sole question is whether the contract which is to be made
by the commissioner must be approved in its entirety by the board
of estimate and apportionment so that they have substantially a

veto upon the power of the commissioner to execute the contract after the proposals have been issued, the bids made, and the successful bidder named and his bid accepted. The question turns upon the construction of section 709 of the consolidation act. It seems to us that there can be very little doubt about the proper construction of this section. When the things which are to be done to complete the contract are examined chronologically, the duties of the respective officials who have duties imposed upon them by the section in question are very clear. The section, in the first place, gives to the commissioner the power to enter into a contract upon certain conditions, which will be referred to later. It then prescribes the manner in which he shall proceed to ascertain with whom the contract is to be made. It says that he shall advertise for proposals in the manner prescribed by the statute to perform the work "in such manner and form and on such terms and conditions as he may prescribe." The terms and conditions referred to here are clearly not the terms and conditions of the final contract, because they can only refer to the proposals, and they must mean simply to include the terms and conditions which the commissioner proposes to impose with regard to the manner of performing the work, because it says that the proposals are to perform the work on such terms and conditions as he may prescribe. Down to this time it is quite clear that the terms and conditions of the contract have not been thought of, because until there is another party to the contract, and the terms and conditions upon which he is willing to undertake the contract have been ascertained, no terms and conditions can be agreed upon. It is quite clear that the terms and conditions referred to here are simply those which the commissioner thinks it necessary to put into the proposal, so that persons who are to bid shall know precisely what they are to do by way of performing the work which they are willing to undertake. When these bids have been made in the manner prescribed by the statute, it is for the commissioner to select the bid or bids the acceptance of which will, in his judgment, best secure the efficient performance of the work. It is to be noticed that the commissioner is not required to select the bid of the lowest bidder. He may select any bid, without regard to its amount, if in his judgment it will best secure the efficient performance of the work. Thus far no other person than the commissioner has any responsibility or duty in the matter. He makes the proposals; he prescribes the terms and conditions which shall be in the proposals; he fixes on the amount which is to be paid, which is not necessarily the lowest amount for which the work is proposed to be done; and when that has been done the contract is to be made. Such contract, in the first place, is to be approved as to form by the counsel to the corporation, and then it is to be presented to the board of estimate and apportionment, who before that time have no duty whatever in the matter. Section 209 of the consolidation act prescribes that the terms of all contracts for the collection of ashes and garbage shall, before they are entered into, be approved by the board of estimate and apportionment; and the provision of section 709 which is in question is simply confirmatory

of the duty which is imposed upon the board of estimate and apportionment by section 209. When the contract is submitted to the board of estimate and apportionment, it is for them to examine it, and to approve it or disapprove it as to its terms and conditions. These terms necessarily mean everything which is included in the contract; not only the things which shall be done, but the manner in which they shall be done, and the price to be paid. The price, indeed, is one of the most important elements in the contract. It was natural that the final word as to this most important element should be spoken by a board to which is intrusted the raising up of money by tax, and the appropriation thereof for municipal purposes. Any duty which did not embrace that would hardly have been worthy of officials upon whom such vital functions are conferred. It would require most specific language to justify the conclusion that it was intended to limit the supervisory power of such a board to the mere terms and conditions of execution and performance, and to exclude the crucial terms of price. We may well rest upon the broad construction that in such a connection and under such circumstances the legislature gave to the word "terms" its full and ordinary signification. This question was determined by the present presiding justice of this court in 1883, in the court of common pleas. The precise question presented there was, must the board of estimate and apportionment approve the contract after the price to be paid is ascertained and inserted therein? He answers that question in the affirmative, and, if that opinion had been reported, we would conceive that we had no further duty to do in the matter except to refer to that, and decide the case on the authority of it. In that case it was said:

"The action of three parties upon the part of the city must unite in order that a legal contract may be entered into: First. The street-cleaning commissioner who has to execute the proposed contract has his functions to perform, which are the advertising for proposals, and the fixing of the terms and conditions for the performance of the contract. The language of the section is: 'He shall advertise for proposals to perform the work in such form and manner and on such terms and conditions as he may prescribe.' The counsel to the corporation is called upon by the act to approve, as to form, all contracts and bonds securing the same; and the street-cleaning commissioner is empowered to enter into the contract, provided always that such contract shall be approved both as to terms and conditions by the board of estimate and apportionment of said city. * * * It seems to me that, unless the language of the act explicitly deprives the board of estimate and apportionment of any oversight or control of the price, it must be held that, when the statute provides that a contract, if entered into, in order to become binding, must be approved both as to its terms and conditions by the board of estimate and apportionment of the city, it means that they shall approve of every term, of every condition, of every provision contained in the agreement."

The opinion on this subject concludes thus:

"Now, what does that mean? Does it not mean that they shall approve of the length of time to which the contract is to run, and also of the stipulations and agreements made either by the contractor or on behalf of the city? It seems apparent that there was the function which it was intended by the legislature that the board of estimate and apportionment should fulfill, and

In every contract one of the most important of its stipulations—one of the most important terms—is the price to be paid for the performance of any specific work." Kearns v. Grace, not reported.

But it is said on behalf of the appellant that, since the words "terms and conditions" are used more than once in this section, the rule of law should be applied that a word or phrase repeatedly used in a statute will bear the same meaning throughout, unless a different meaning appears. Suth. St. Const. §§ 255. Undoubtedly there is such a rule; but it is a rule in aid of the construction of statutes, and not one which necessarily controls such construction. It is not applied where the meaning of the phrase is not ambiguous, but, as has been stated in several of the authorities referred to by Sutherland, the rule is more correctly laid down that, where the meaning of a phrase or word in the statute is doubtful, but the meaning of the same word or phrase is clear where it is used elsewhere in the same act, the word or phrase in the obscure clause will be held to mean the same thing as in the instance where the meaning is clear. James v. Du Bois, 16 N. J. Law, 286; Rhodes v. Weldy, 46 Ohio St. 234, 20 N. E. 461. The rule is that the same construction will be adopted unless the intention is clear that a different construction is required. In this case it seems to us it is quite clear that a different construction is required. because it cannot be that the terms and conditions of a proposal to be made by the commissioner of street cleaning long before any contract has been provided for shall necessarily embrace all the terms and conditions of the contract which. is to be entered into after the bids have been made, and the successful bidder is ascertained. It is claimed, however, on the part of the relator that the terms and conditions of these proposals were prescribed by the act of the board of estimate and apportionment in approving the form of contract which was attached to the proposals. It is undoubtedly true that the form was submitted to the board of estimate and apportionment, and was approved by them. But that was a mere matter of convenience, and that mode of procedure was probably adopted in deference to the suggestions made by Judge Van Brunt in Kearns v. Grace, above referred to. But, however that may be, the act of the board of estimate and apportionment in approving a form of contract before the proposals were made and the bid accepted was not one which was within their duty, nor did it bind either the commissioner in framing the proposals or the board in its final action upon the perfected contract. The street-cleaning commissioner was still at liberty, in putting out his proposals, to include within them such terms and conditions as he saw fit; and, although he may have been willing to adopt, so far as it should go, the form of contract which had theretofore been approved by the board of estimate and apportionment for purposes of convenience, still it was not an act which the law required, or even authorized, the board of estimate and apportionment to do in such a way as to bind them when the final contract came up to be presented to them for approval; and that they did do so cannot be regarded as of importance here.

But it is said that within the case of Lynch v. Mayor, etc., 2 App. Div. 213, 37 N. Y. Supp. 798, the commissioner of street cleaning, having awarded the bid to the relator pursuant to the powers conferred upon him by section 709, it is entitled to the contract, and its rights are fixed. But that case does not apply, because the statute expressly provides that a contract cannot be entered into until it has been approved by the board of estimate and apportionment. The bid must have been made by the relator and accepted by the commissioner in view of that requirement of the law; and therefore the rights of the parties could not be fixed until such time as the board of estimate and apportionment had considered the contract, and come to the conclusion to approve it.

For these reasons we think that the decision of the court below was right, and the order must be affirmed, with $50 costs and disbursements. All concur.