PILCHER *et al. v.* ENGLISH, commissioner, *et al.*

1. Where there has been a substantial compliance with the provisions of § 345 of the Political Code in regard to the advertisement for bids for erecting a court-house, embracing such details and specifications as to enable the public to know the extent and character of the work to be done, and the terms and time of payment, the carrying out of the contract to build a court-house, following such advertisement, will not be enjoined at the instance of taxpayers, on the ground that the county authorities failed to observe such requirements.
2. The advertisement should embrace "such details and specifications as will enable the public to know the extent and character of the work to be done, and the terms and time of payment." It is not necessary that all of the details of the plans and specifications of the architect on file should be embraced in the publication. It is permissible to refer to them for additional detailed information.
3. Where the advertisement stated a date on or before which the work must be begun, that the building should be finally completed by another

specified date, and that payments would be made monthly of 75 per cent. of the proportionate part of the contract executed, upon the certificate of the architect, and referred for more detailed information to the plans and specifications on file and open to inspection, and these showed distinctly that the final payment should be made when the work was completed and accepted, this sufficiently stated the time of payment to withstand an injunction against the carrying out of the contract, based on an alleged failure in the notice to show such time.

4. Where county authorities were proceeding to let a contract for building a court-house to the lowest bidder as provided by § 344 of the Political Code, the provision in § 345 that the advertisement should "embrace such details and specifications as will enable the public to know the extent and character of the work to be done, and the terms and time of payment," did not require that the authorities should state in such publication an exact or an approximate price at which the contract would be let.

5. Where bids for the erection of a court-house were submitted to the commissioners having charge of the county affairs, and at a meeting of the board one of the bids was accepted as being the lowest and best, and by resolution the chairman of the board was authorized and directed to prepare and execute a contract based on such bid; and where the contract was prepared and signed by the contractor and the chairman, and was presented to the board, and by resolution was ratified, approved, confirmed, and ordered to be recorded on the minutes, which was done, there was no error in refusing to grant an injunction, at the instance of taxpayers, to prevent the performance of the contract, on the ground that it was signed by the chairman and not by all of the commissioners.

6. Where, before the making of a contract for the erection of a court-house, the county commissioners made a tax levy for such purpose, it was not revoked because later during the same meeting resolutions were adopted stating that the commissioners reserved the right to remit such special tax altogether if the question of issuing bonds should be submitted to the voters and receive the necessary favorable vote at an election held for that purpose, and also that the commissioners might in their discretion collect the tax levied in instalments extending over four years, but that the direct levy already made and the authority to collect it at any time should not be affected.

(a) Where a direct tax had been levied in one year for the erection of a court-house, the county commissioners could not authorize its collection in annual instalments extending over four years; but the mere declaration that they might in their discretion do so, but without in fact affecting the levy which had been made, did not operate as a revocation of such levy or render illegal the making of a contract for erecting the court-house, based on such provision for payment.

7. Where a contract for the erection of a court-house was made in August and due provision was made for payment thereunder, the contract was not rendered illegal merely because the work was not required to be completed and final payment made to the contractor prior to the first of April of the following year.

32

8. There was no error in refusing an injunction further than it was granted by the presiding judge.

Argued November 1,—Decided November 19, 1909.

Petition for injunction. Before Judge Meadow. Warren superior court. October 8, 1909.

W. W. Pilcher and others, as citizens and taxpayers of Warren county, filed their equitable petition against the commissioners of roads and revenues of that county, and the Falls City Construction Company, seeking to have the contract made by the county commissioners with the construction company for the erection of a county court-house declared illegal, and to enjoin them from carrying it out. It was also sought to enjoin the holding of an election to determine the question of issuing bonds for the building of the court-house; but on the argument in the Supreme Court that portion of the case was abandoned, it being conceded that the election had already been held, and had resulted adversely to the issuance of bonds. The grounds on which the plaintiffs based their contention as to the illegality of the contract were, in brief, as follows: The notice which was published by the commissioners in advertising for bids for the erection of the court-house was insufficient, in that it did not show even approximately the cost of the building to be erected; it was not sufficient as to the character of the building or the terms and conditions on which it was proposed to award the contract; it did not state definitely the terms and time of payment, or the amount to be paid, or when the final payment was to be made; it did not show whether the building was to be delivered furnished or unfurnished; it did not state the size of any room or office, or the height of the joists, or attempt to give any dimensions of the court-room, or what the height of the ceiling should be; and the notice was signed only by the chairman of the board of commissioners. The contract was alleged to be illegal because the notice was not sufficient, and also for the following additional reasons: that at the time of its making there were not sufficient funds in the hands of the treasurer of the county to pay for its performance; that when it was executed no direct tax was levied sufficient, together with the funds in the treasury, to pay the amount which would be due under it; that the tax levy which was made for the erection of a court-house was revoked; that the contract was not to be

completed during the year 1909, when it was made; that it was not to be completed till April 1, 1910, and, there not being funds in hand and no direct tax levy sufficient for the purpose, this was the creation of a debt; and that by one provision of the contract it was sought to make the county liable for litigation which might arise on the part of the contractors or other persons. By amendment it was alleged, that the contract was also illegal on the ground that it was signed by the chairman of the board, and not by the other commissioners; that he had no power to contract, and the other commissioners could not delegate such power to him. The notice which was published stated that at a certain time the board of commissioners of roads and revenues would receive sealed proposals for furnishing materials and providing the labor required for the building of a court-house at Warrenton, Georgia, according to the plans and specifications prepared by named architects and on file and open to inspection at the office of the ordinary and clerk of the board of commissioners; that all bids should be delivered sealed to the board of commissioners on or before the time mentioned, and should be accompanied by a letter from a surety company stating that it would furnish bond for the bidder, if the work should be awarded to him; that a certified check for $3,000, payable to the order of the chairman of the board, must accompany each bid, to be forfeited to the county should the contract be awarded to the bidder and should he fail within twenty days to execute a bond in double the amount of the bid, for the faithful performance of the contract; that bids should be made out on proposal blanks furnished by the architects; and the contractor to whom the work should be awarded was required to possess resources and to furnish evidence to the satisfaction of the architects and board of commissioners that he was skilled and experienced in fireproof construction, and also experienced in building houses of the character required. It was stated that "the building will be 61-5"x83'-5" in size, with re-enforced concrete footing, with exterior walls of stone and pressed brick." Under the head of "Arrangement of rooms to be as follows," there was a statement of a basement room, the rooms which were required on the first floor and those on the second floor. Among the latter was the item "Court-room 46'x49'." Then followed the statement, "All as

more particularly described in the minute and detailed specifications of the work filed and open to inspection at the office of the ordinary and clerk of the board of commissioners." It was declared, that the first and second floor construction and the ceiling and roof would be fireproof, the roof to be of slate and copper, or other material as specified; that all the openings of the first floor, where marked, both doors and windows, would be of metal, the wainscoting compound tile, the corridor floors, where marked on the plan, "terrolithic." It was stated that the contractor would be required to start work on or before September 1, 1909, and that the building should be finally completed on or before April 1, 1910. Bidders were informed that a set of the plans and specifications might be obtained from the architects. The statement as to the payment by the county was that "Payments will be made monthly of 75% of the proportionate part of the contract executed, upon the certificate of the architect." This was signed by the chairman of the board. The specifications prepared by the architects were full and detailed as to the nature and character of the work. In these specifications the following statement was included: "Payments on work, amounting to 75% of the proportionate part of the contract executed, shall be made about the first day of each month, and properly presented and signed, to the board of commissioners. The retained 25% shall be due and payable at final completion of building, and the contractor shall retain possession of and be responsible for the entire building until full settlement is made." The contract which was executed provided for the commencement of the work by September 1, 1910, and its completion within 150 working days. It provided, that the price to be paid for the entire work was to be $24,973; that payment would be made, between the first and tenth of each month, of 75% of the value of material ordered and accepted and work properly done, upon the estimate of the architects; and that the remaining 25% would be due and payable to the contractor upon the completion of the building. It described in general provisions the work to be done, and referred to the plans and specifications of the architect. It was signed by the contractor, and by the chairman of the board of commissioners. The board of commissioners passed a resolution, accepting the bid of the Falls City Construction Company, and authorizing the chairman to execute a con-

tract based thereon.   On the day when the contract above de-
scribed was signed, the board passed a resolution, reciting that it
had been executed and presented to them, and that it was ratified,
approved, and confirmed, and ordered to be recorded on the min-
utes.   The contract was dated August 16, 1909.   On June 8
preceding its execution, the board of commissioners levied a
county tax for the year, one item of which was "One dollar and
thirty-five cents on the one hundred dollars, to build a court-
house in and for said county."   At the same meeting a separate
resolution was adopted, to the effect that the board reserved the
right to "remit the direct tax levy" that day made for court-
house purposes, in case the board should later submit to the voters
of the county the question of issuing bonds for the building of
the court-house and the election should result in favor of such
bonds.   At the same meeting still another resolution was adopted,
to the effect that the board of commissioners might, in their dis-
cretion, collect the tax, that day levied for the purpose of building
a court-house, in four equal annual instalments, in the fall of
1909, 1910, 1911, and 1912 respectively, "though this order shall
not in any way affect the present direct levy of said tax and the
authority to collect all or any part of it at any time in the dis-
cretion of said board."

The presiding judge refused to grant an injunction except as
to one provision in the contract, by which the commissioners
agreed that, if there should be any suit by injunction or other-
wise respecting the acts of the contractor or the prosecution of
the work or location of the building, or the making of the contract,
or the collection of money due under it, the county should pay
all costs of defending such suit, or arising out of it, without cost
to the contractor, and should hold it harmless except in case of
default in complying with the contract.   The judge held, how-
ever, that this clause did not vitiate the entire contract, or require
its execution to be enjoined as a whole.   The complainants ex-
cepted.

*E. T. Shurley* and *L. D. McGregor,* for plaintiffs.

*E. P. Davis, H. H. Dean* and *M. L. Felts,* for defendants.

LUMPKIN, J.   (After stating the foregoing facts.)

The plaintiffs sought to enjoin the carrying out of a contract
to build a court-house in Warren county.   They attacked the

notice which was published prior to the execution of the contract, as deficient in several particulars, and contended that the contract based upon it was therefore illegal. They also attacked the contract on account of defects which it was claimed existed in it, and because it was contended that no sufficient fund had been provided for the payment which would be due under it, and that the tax levy which was made had been revoked.

It was urged that the published notice was illegal, because it did not specify even approximately what the cost of the court-house should be, or what amount the commissioners proposed to expend in the erection of it. The Civil Code of 1895, § 345, declares that whenever the contract is likely to cost a sum greater than $5,000, the proper officer shall give notice in the newspaper in which the sheriff's advertisements are published, once a week for eight weeks, and by posting a written notice at the court-house door for a like time, "which notice and advertisement shall embrace such details and specifications as will enable the public to know the extent and character of the work to be done, and the terms and time of payment." The argument was that the word "terms," as here used, included price. Section 344 provides for letting the contract to the lowest bidder, after the advertisement has been made. If the publication must specify the price at which the building is to be erected, then it would be useless to have competitive bids, and nothing would remain except for the contractor to accept or reject the price so fixed. The provision for letting out the contract to the lowest bidder clearly negatives the idea of absolutely predetermining and publishing exactly what such price shall be. It was said, however, that an approximate price should be fixed and published. If the advertisement were required to state the price to be paid, and then the price had to be fixed by competition among bidders, evidently the published price could not be an accurate statement of the ultimate price, and at most could only be either a maximum limit, or an approximation or estimate on the part of the commissioners as to what the lowest bid would be. The word "terms" does not always have identically the same signification. The instrument in which it is used, the context, and the subject-matter may all be considered in determining the exact meaning to be given to the word in a particular instance. If it should be said that the terms

of a contract for the erection of a court-house must be in writing, most likely this would be understood as meaning that all the terms and provisions, including the price, must be stated in writing. But, as will appear from what has been said above, the word as used in the statute under consideration could not be construed to mean that the final price to be named in the contract must be stated in advance in the advertisement inviting bids, without imputing an absurd intention to the legislature. If the word "terms" in this statute meant an offered price, which had only to be accepted by the other contracting party, it would destroy competitive bidding as to price. We find nothing in the law which would authorize the construction that "terms" included price, but that the requirement would be satisfied by only approximate or estimated price, or which requires the commissioner to make an estimate as to what the lowest bid and therefore the ultimate price will be; nor can we construe the word "terms" as requiring them to state in the advertisement, as a requisite of its validity, a maximum price. It might be useful to approximate the price, or to limit it; but we can not declare the advertisement invalid because it does not contain such a statement. If the lowest bid were greater than the county authorities could lawfully accept, and enter into a contract on the basis of it, this might result in a rejection. But in the case before us, we are asked to declare a contract which has been entered into with the lowest bidder void, because the word "terms" in the section of the code above cited required, as an essential of the advertisement, a statement of the price, and rendered the contract invalid for lack of it. See Hurd v. Whitsell, 4 Colo. 77, 84; People v. Waring, 5 App. Div. 311 (39 N. Y. Supp. 193).

Other contentions were that the publication did not sufficiently state the terms and conditions under which the contract was to be awarded, or show definitely when payments were to be made, or show whether the building was to be delivered furnished or unfurnished, or give the dimensions. The publication was not invalid because of any of these objections. It embraced in somewhat general terms such details and specifications as would enable the public to know the extent and character of the work to be done, and referred for more detailed information to the plans and specifications on file in the office of the ordinary and clerk of

the board.    It also stated the time when the work should begin, and
the date when it should be completed.    It fixed the time for the
making of the bids, and contained provisions as to furnishing
surety, delivering a certified check as a forfeit, the manner in
which bids should be made out, etc.    It further stated that pay-
ments would be made monthly of 75 per cent. of the proportionate
part of the contract price, upon the certificate of the architect.
The specifications, to which reference was made, contained the
statement that payments on the work amounting to 75 per cent.
of the proportionate part of the contract executed should be made
the first of each month, and that the remaining 25 per cent. should
be due and payable at the final completion of the building.    This
was a substantial compliance with the requirements of the Polit-
ical Code, §345, in regard to the advertisement for bids.    *Ander-
son* v. *Newton,* 123 *Ga.* 513 (51 S. E. 508).    In *Scott* v. *Crow,*
121 *Ga.* 68 (48 S. E. 691), neither the dates when payments were
to be made nor when the building should be commenced or com-
pleted were stated.    In this it differed from the contract consid-
ered in *Butts* v. *Little,* 68 *Ga.* 272.    See also *Manly Building
Co.* v. *Newton,* 114 *Ga.* 245, 252 (40 S. E. 274).    There was
nothing in the other grounds of attack upon the published notice,
which required an injunction against the carrying out of the con-
tract.

On June 8, preceding the making of the contract in August, the
board of commissioners levied a tax of $1.35 per hundred dollars,
for the purpose of building a court-house.    Upon the same day
they passed two additional resolutions.    One of them stated that
the board reserved the right to remit the direct tax levy that
day made for court-house purposes, in case they should later submit
the question of issuing bonds to the voters, and in case the election
should result in favor of such issue.    The other declared that the
board of commissioners might, in their discretion, collect the special
tax for building a court-house in four equal annual instalments,
but that this order should not in any way affect the direct levy of
the tax and the authority to collect all or any part of it at any
time, in the discretion of the board.    The first of the resolutions
mentioned was a declaration of what the commissioners might do
in a certain event, which did not occur.    The second resolution was
also not a direct suspension or revocation of the tax levy, but a dec-

laration that the board *might,* in their discretion, distribute the collection over four years, but did not intend to affect the levy or the right to collect the tax.    In this declaration of what they might do as to scattering the collection of the tax over four years, they were mistaken in their power.    They had no such authority, and any effort of that character would have been illegal.    *Johnson* v. *Pinson,* 126 *Ga.* 121 (54 S. E. 922) ; s. c. 127 *Ga.* 144 (56 S. E. 238).   Had this resolution revoked the tax levy, the plaintiffs' contention on this subject might have been well taken; but the mere assertion of a power to do something which they could not lawfully do, and which it does not appear they have actually attempted to do, spread on their minutes in the shape of a separate resolution, and not as a modification or revocation of the special tax levy, did not have the effect to render such levy illegal.

If the contract was in other respects legal, and provision for payment was duly made, the mere fact that the work could not be completed between the date of the contract in August and the end of the year, and that it was to be completed and final payment made in the early part of the succeeding year, did not render such contract unlawful.   *Gaines* v. *Dyer,* 128 *Ga.* 585 (58 S. E. 175).

The plaintiffs in error contended that the contract was signed only by the chairman of the board, and not by all of its members, and was therefore illegal.    It appeared, however, that, at a meeting of the board, the bid of the Falls City Construction Company was by resolution accepted as being the lowest and best bid, and the chairman of the board was authorized and directed to prepare and execute a contract based on such bid.    The minutes also showed that the contract, having been executed and presented to the board, was ratified, approved, and confirmed and ordered to be entered on the minutes.    Thus the discretionary power of acting upon the bids, accepting that of one of the contractors and closing the contract on that basis, was exercised by the commissioners as a body. The ministerial duty of preparing a contract accordingly was entrusted to the chairman; but the contract as thus executed was presented to the board, and approved as the contract between the county and the contractor.    Under the circumstances above stated, there was no error, on that ground, in refusing to enjoin the performance of the contract.    Indeed in their original petition the plaintiffs alleged that the commissioners had entered into and

executed the contract, and that it had been entered on the minutes. By an amendment they attacked the sufficiency of the signature thereto on behalf of the county. ·

The notice of the holding of the bond election did not revoke the tax levy; and the effort to enjoin such election was abandoned in this court, counsel for both sides conceding that the election had already been held, and had resulted adversely to the issuing of bonds.

The presiding judge enjoined the carrying into effect of one clause in the contract in regard to paying the expenses of litigation. But this was separable, and did not destroy the entire contract. In the light of the pleadings and evidence, there was no error in the refusal of the injunction further than it was granted.

*Judgment affirmed.    All the Justices concur.*