# CASES

### DECIDED IN THE

# SUPREME COURT OF GEORGIA

#### AT THE

## MARCH TERM, 1916.

---

DUNN *et al.*, commissioners, *v.* O'NEILL *et al.*

1. Under the act of February 21, 1873 (Acts 1873, p. 282), the board of commissioners of revenue, roads, etc., of Murray county have authority to contract for the erection of a court-house for the county, complying with the law regulating such matters.

2. That the contract let did not provide for heating the building furnished no ground for enjoining its performance.

3. The pleadings and evidence raised a question of fact as to whether or not the commissioners posted the notice required by the Civil Code (1910), § 388, and the allegation that they did not do so was one ground of the prayer to enjoin the erection of the court-house under the contract which was made. The presiding judge granted the interlocutory injunction generally, without specifying any particular ground therefor. Under the conflict above mentioned, it can not be held that he abused his discretion in doing so.

MARCH 15, 1916.

Injunction. Before Judge Fite. Murray superior court. October 6, 1915.

J. H. O'Neill and four other persons, alleging themselves to be citizens and taxpayers of Murray county, filed their equitable petition against D. R. Dunn, T. M. Hemphill, and J. A. McGhee, composing the board of roads and revenues of Murray county, and H. J. Carr & Company. As amended, the petition in substance alleged as follows: The board of commissioners and H. J. Carr & Company are seeking and preparing to erect a court-house for the county at Chatsworth. On or about May 25, 1915, the board entered into a contract with Carr & Company for the erection of a

part of the court-house. Such contract is alleged to be illegal and void, for the following reasons: (*a*) "That notice of the proposal of bids and letting of said contract was not posted at the court-house door as required by law." (*b*) "That there is no provision in said contract for the heating of said court-house, except that said contract provides that said court-house shall be partly heated from the boiler at the jail with grates and heaters, which your petitioners allege is inadequate to supply sufficient heat for said building, and the same can not be heated without a boiler under the building." (*c*) "The contract is illegal and void for the reason that the board of commissioners of Murray county are without authority of law to make any contract for the erection of a court-house for the county; but the authority to erect and repair all public buildings in that county is vested by law in the ordinary." The prayers were, "that said defendants be restrained and enjoined from building and erecting a court-house under the alleged contract;" that the contract be declared null and void; that process issue and be served, and the defendants be ordered to show cause why the prayers of the petition should not be granted; and for such other and further relief as might be meet in the premises. The petition was sworn to positively by one of the plaintiffs and one of their attorneys. The judge of the superior court issued a rule nisi, and further ordered that "in the meantime and until the hearing the defendants be and they are hereby enjoined as prayed."

The answer of the commissioners was in substance as follows: They admit that the plaintiffs are citizens of the county, that Dunn, Hemphill, and McGhee compose the board of roads and revenues of Murray county, and that said board has charge and control of the fiscal affairs of the county. It is their duty to build a court-house for the county, which has no court-house at its county site; and the erection of a court-house is a necessity. They have entered into a contract with H. J. Carr & Company, covering the erection of a portion of the building, and it would now have been in process of erection but for the dilatory and obstructive tactics which have been resorted to by certain residents of the county. The chief trouble which the commissioners have had in the discharge of their duties is that certain people in the county do not want a court-house. The defendants deny that the contract is

illegal and void. The allegation that notice of the proposal for bids and letting of the contract was not posted at the court-house door as required by law is untrue. The law in that respect was fully complied with. The plans and specifications for the court-house provided ample heating for the building. The commissioners did not have to let the construction of a complete, furnished, and equipped building under one contract, but had the right to specify the different portions of the building and the furnishings in separate contracts. The plans show and call for a boiler-room in the basement of the building, with concrete floor, and this is included in the contract let to Carr & Company. It has not been necessary or desirable to let a contract for heating the building so far, but the heating of the building has been arranged for and will be taken care of as the erection of such building progresses. The allegation that the board of commissioners have no authority to build the court-house is denied. The answer of the commissioners and the amendment thereto were verified.

H. J. Carr & Company filed a separate answer in substance as follows: For want of information they are unable to admit or deny the allegation that the plaintiffs are citizens and taxpayers of Murray county. About five months before the date of the answer the board of commissioners advertised for bids for the building of a court-house. So far as these defendants know and believe, the advertisement complied fully and strictly with the law. These defendants submitted a bid for the erection of a portion of the court-house. It was accepted, and they entered into a bond for compliance with their contract, and made all necessary preparations for the beginning of the work at the time when they contracted to begin it. They would have begun the erection of the building at or about the time specified, and would have progressed with the work, but for the fact that just before its commencement one E. H. Beck filed a petition in the superior court of Murray county to enjoin the board of commissioners and these defendants from building the court-house. A restraining order was granted thereon, and later an injunction was granted; but the case was carried to the Supreme Court, and the judgment has recently been reversed. About the time when this judgment of reversal was rendered, which would have the effect of freeing these defendants from the injunction against them, the plaintiffs in the present case

brought their petition for injunction, and another restraining order was granted. These defendants are under contract, have made bond to comply with it, and whenever they are permitted to go forward with the work in discharge of their contract they will do so. The contract was for the erection of a part of the court-house, and it rarely happens that a contract is let for the building of an entire court-house. This is true of other important buildings. There are frequently a number of contracts, which, when all are completed, will give the county a complete building. It is generally the case that the heating-plant is provided for under a separate contract with people who are specially engaged in that line of business. No objection was made to the legality of the advertisement prior to the time when the contract was made. These defendants submit that the plaintiffs, if not satisfied with the bids, should have complained then, and not have permitted these defendants to incur the expense of making bond to the county and of making contracts for the material to be used; and the plaintiffs should not now be heard to complain, after these defendants have entered into the contract and incurred such expenses and obligation.

On the hearing the presiding judge passed the following order: "After hearing evidence and argument in the foregoing case, it is considered and ordered and adjudged that the injunction heretofore granted be and the same is hereby continued until the further order of the court." The defendants excepted.

*Jesse M. Sellers* and *D. W. Blair,* for plaintiffs in error.

*H. H. Anderson, J. J. Bales,* and *Walter McElreath,* contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. Prior to the constitution of 1868, the inferior court, when sitting for county purposes, had jurisdiction "in levying a general tax for general purposes, and a special tax for particular purposes, according to the provisions of this Code." Code of 1863, § 286; Code of 1868, § 346 (2). By section 530 of the Code of 1868 (Code of 1863, § 468), it was declared that "the county buildings are to be erected and kept in order and repair at the expense of the county, under the direction of such justices, who are authorized to make all necessary contracts for that purpose." Section 531 (Code of 1863, § 469) declared: "It is the duty of the justices of the inferior court to erect or repair, when necessary,

their respective court-houses, and jails," etc. Section 536 declared: "The justices of the inferior courts of the several counties have the power to levy an extra tax sufficient to carry into effect sections 530 and 531, without a recommendation by the grand jury, whenever the necessity arises." By the constitution of 1868 the inferior courts were abolished, and their unfinished business and the duties of the justices were transferred to such tribunals as the legislature might designate. Code of 1873, § 5126. The ordinaries were to perform the duties of the inferior courts until otherwise provided by law. Code of 1873, § 5149. Thereafter the word "ordinary" or "ordinaries" was substituted for "inferior courts" or "justices of the inferior court" in later codes in dealing with such matters. Civil Code (1910), §§ 399, 400. By the constitution of 1868 it was also provided that the legislature might create county commissioners in such counties as might require them, and define their duties. Code of 1873, § 5127.

In 1873 the legislature created a board of commissioners for Murray county. The first section of the act, so far as it is material to this case, was as follows: "That, from and after the passage of this act, there shall be established in the county of Murray a board of five commissioners of revenue, roads, bridges, ferries, paupers and pauper's fund, with full power to levy all taxes for county purposes; to appoint all road commissioners; to establish new roads and abolish old ones; to establish or abolish ferries; to build and repair bridges; to change lines of militia districts or to establish new districts; to appoint overseers of the poor, and to say who shall be beneficiaries of the pauper fund." The fifth section was: "That the said board shall have all the powers the inferior court had prior to the adoption of the constitution of 1868, as prescribed by the Revised Code on all county matters, but shall have no other jurisdiction." Acts 1873, p. 282. This act has been twice amended, but the amendments are not material to the case now before us. Acts 1882-3, p. 505; Acts 1893, p. 365.

We think it is plain that the act of 1873 conferred on the commissioners of Murray county authority to erect a court-house for the county. The argument that the law conferred on them the power to levy all taxes for county purposes, but left the power to erect the court-house in the ordinary, is ingenious but unsound.

2. The contention that the building of the court-house and its heating equipment must be let as a whole, and that the performance of the contract should be enjoined because it did not provide for heating the building, is concluded by the decision in *Carruth* v. *Wagener,* 114 *Ga.* 740 (40 S. E. 700).

3. The plaintiffs alleged that notice of the proposal for bids and the letting of the contract was not posted at the court-house door, as required by law. The commissioners denied this allegation, and an issue of fact was raised. By the Civil Code (1910), § 388, whenever the contract for the building of a court-house or other public work in a county is likely to cost more than $5,000, "the proper officer shall give notice in the public gazette wherein the sheriff's sales are advertised, once a week for four weeks, and by posting a written notice at the court-house door for a like time, which notice and advertisement shall embrace such details and specifications as will enable the public to know the extent and character of the work to be done, and the terms and time of payment." Section 389 requires the taking of a bond from the contractor. It also provides that "it shall be unlawful to let out any contract for the building or repairing of any public building, bridge, or other public work, unless the provisions of these sections are complied with; and any contractor doing, or having done, any work of the kind in any other manner shall not be entitled to receive pay therefor." An exception is made as to work which can be done at a cost less than $300. It has been held that a failure to obey the requirement as to the contents of the notice and advertisement renders the contract illegal. *Dyer* v. *Erwin,* 106 *Ga.* 845 (33 S. E. 63). It has also been declared that a substantial compliance will suffice. *Pilcher* v. *English,* 133 *Ga.* 496 (66 S. E. 163). If no notice is posted there is not a substantial compliance. It is unnecessary to consider whether, if a notice be posted, and subsequently be torn down by some careless or malicious person, without the consent of the commissioners, this would affect the validity of the contract. No such case is presented here. The issue is made whether the notice was posted at all. Sellers, the clerk of the commissioners, made affidavit that he posted the notice before the court-house door more than thirty days before the contract was let (which was on May 25, 1915), and that it remained so posted until after the letting of the contract. He was

corroborated by several other witnesses. (The court-house referred to is the building in which the superior court is held.) On the other hand, a witness testified by affidavit to the effect that on May 4, 1915, he examined the court-house doors at the only place in or around the building where legal notices were posted, and that no notice of the inviting of bids for the erection of a court-house was there posted; that the other witness mentioned below was present, and posted on the facing of the door a notice of the intention to introduce in the legislature a local bill; that a notice of a bond election was the only notice posted on the court-house door at that time; and that these notices remained there at the time when the affidavit was made. Another witness testified by affidavit, that, just after he had information that a contract was to be let, he examined the court-house doors to see if any notice had been posted, inviting bids for the erection of a court-house, and that there was no notice posted; that sometime afterward he posted a notice of an intention to introduce certain local legislation; that there was not then posted any notice of the proposed letting of the contract for the building of the court-house; and that the witness mentioned above was present on the last occasion. A third witness testified that about the 14th or 15th of May he went up and down the steps of the court-house; that he examined the court-house door to see if any notice of the proposed letting of the contract had been posted on or at it; and that there was no such notice posted on the door at that time, which he could find.

The contemplation of the statute is, that, in posting a notice, it will be fastened or fixed so that it may reasonably be expected to remain for four weeks. In other words, it is a posting having some permanency. Where the testimony introduced by the defendants tended to show that the notice was posted more than thirty days before the contract was let, and remained so posted, evidence to the effect that not long after the time when it was claimed that the posting was done, and at several times before the contract was let, the notice was not posted, had evidential value in determining whether in fact the notice was posted at all, and raised a conflict as to that point. The order of the presiding judge granting the injunction was general in character, and may have rested on his finding on this issue of fact. We can not say that it did not do so; and if he thus found such issue (so far as to authorize

the interlocutory decree) in favor of the allegation that there was no posting, we can not hold that he abused his discretion in such finding.   Accordingly, on this ground, the judgment is

*Affirmed.   All the Justices concur.*