GILBERT COLON, Appellant, v AETNA CASUALTY & SURETY COMPANY, Respondent.

Second Department, November 20, 1978

## APPEARANCES OF COUNSEL

*Gitomer, Schwimmer & Gitomer, P. C. (Richard Klein* of counsel), for appellant.

*J. Robert Morris (Joseph D. Ahearn* of counsel), for respondent.

**OPINION OF THE COURT**

HOPKINS, J. P.

This appeal presents a question of the interpretation of the Comprehensive Automobile Insurance Reparations Act—the "no-fault" statute (Insurance Law, art 18). The question, briefly stated, is whether a driver who alights from his disabled automobile, walks along the highway and is struck by a passing automobile, is entitled to first-party benefits under the insurance policy covering the offending automobile pursuant to the provisions of the no-fault statute.

The plaintiff instituted this action for a declaratory judgment adjudicating that the defendant, the insurer of the automobile which hit him, is responsible for the payment of no-fault benefits. After a trial, Trial Term held that the plaintiff was not entitled to those benefits, finding that he was an occupant of his disabled vehicle and therefore, under the cases construing article 17-A of the Insurance Law (the Motor Vehicle Accident Indemnification Corporation Law [MVAIC Law]), he was excepted from the operation of the no-fault statute.

■ We do not agree. The provisions and policy of the no-fault statute differ from the MVAIC Law and must be given a construction favoring the plaintiff as a beneficiary of first-party payments. Accordingly, the judgment should be reversed and judgment directed on behalf of the plaintiff, declaring that the defendant is responsible to him under the no-fault statute.

I

The facts essentially are not in dispute. On the evening of November 12, 1976, the plaintiff was operating an automobile on the Grand Central Parkway. According to the testimony, the car's hood "flew up and it smashed into the windshield and it blocked the view." The plaintiff stopped the vehicle and he and his two passengers alighted to inspect the damage. They found that the windshield was shattered at eye level and they could not close the hood.

Finally, one of the passengers drove the car partly on the center median, so that the two left wheels rested on the median and the two right wheels remained on the highway.

The plaintiff and his companions then attempted to give warning to oncoming traffic by flagging approaching vehicles. About 15 or 20 minutes after the time that the car had become disabled, the plaintiff, who was then about five to six feet to the rear of the car, was struck by an automobile operated by one Conwell.[1] Conwell's automobile was insured by the defendant.

Thereafter, the plaintiff filed a claim with the defendant for first-party benefits under the no-fault statute. The defendant denied the claim. This action for a declaratory judgment was then commenced.

## II

The plaintiff's claim is that he was a pedestrian at the time of the accident. He argues that the no-fault statute defines a "covered person", among others, as "any pedestrian injured through the use or operation of * * * a motor vehicle" which is insured under the Vehicle and Traffic Law (Insurance Law, § 671, subd 10). A "covered person" is entitled to "first party benefits" provided under the no-fault statute (Insurance Law, § 671, subd 2).

However, the defendant points out that the succeeding section of the no-fault statute does not correspond to the quoted language of subdivision 10 of section 671 of the Insurance Law. Thus, subdivision 1 of section 672 prescribes that "[e]very owner's policy of liability insurance issued on a motor vehicle * * * shall be liable for; [sic] the payment of first party benefits to: (a) persons, other than occupants of another motor vehicle * * * for loss arising out of the use or operation in this state of such motor vehicle". The defendant contends, noting the absence of the word "pedestrian" from section 672 (subd 1, par [a]), that the plaintiff was an occupant of another · motor vehicle and thus is excepted from the receipt of first-party benefits.

The defendant reinforces its argument by citing a series of cases interpreting the MVAIC Law. The MVAIC Law, in dealing with "hit-and-run" accidents, provides that its protec-

---

1. The disabled automobile was apparently not insured. Although this fact is not stated in the briefs of the parties, it was disclosed on oral argument. We do not consider that it is material under the circumstances of this appeal. Nor do we consider it material that if it were to be held that the plaintiff was not entitled to the benefits which he seeks in this action, he may be entitled to recovery under the common law for his injuries (cf. Insurance Law, § 672).

tion "shall not apply to any cause of action by an insured or qualified person arising out of a motor vehicle accident occurring in this state lying against a person or persons whose identity is unascertainable, unless the bodily injury * * * arose out of physical contact of the motor vehicle * * * with the insured or qualified person or with a motor vehicle which the insured or qualified person was occupying at the time of the accident" (Insurance Law, § 617). Section 617 then defines "occupying" as "in or upon or entering into or alighting from." Because of its sentence structure, embodying a negative rather than an affirmative form toward coverage, section 617 of the Insurance Law requires parsing: it must be stressed that under analysis it extends rather than excludes coverage under the MVAIC Law with respect to persons who are occupants as that word is defined. Here it is to be noted that the defendant cites its construction of section 617 of the Insurance Law to withhold coverage from the plaintiff.

In support of the argument that the plaintiff was an occupant of his disabled car, the defendant invokes the authority of cases which have upheld coverage under section 617 (*Matter of Rice v Allstate Ins. Co.,* 32 NY2d 6; *Matter of State-Wide Ins. Co. v Murdock,* 31 AD2d 978, affd 25 NY2d 674; *Matter of Cepeda v United States Fid. & Guar. Co.,* 37 AD2d 454; *Matter of MVAIC v Oppedisano,* 41 Misc 2d 1029). Two of the cases cited involve parties who were passengers of an automobile which, for one reason or another, was parked on the side of a highway and who had alighted from the automobile.

In *Matter of State-Wide Ins. Co. v Murdock* (31 AD2d 978, *supra),* Murdock was a passenger in a stalled panel truck. He had alighted and walked around the truck, when he was hit by a passing vehicle within four or five seconds from the time he left the truck. We held that under section 617 of the Insurance Law, he was "occupying" the truck (*supra,* p 979) and, accordingly, was entitled to the protection of the MVAIC Law, a conclusion affirmed by the Court of Appeals.

In *Matter of Cepeda v United States Fid. & Guar. Co.* (37 AD2d 454, *supra),* the decedents were passengers of a car parked on the side of the highway. The decedents departed from the car to join the driver, who was talking with the driver of another car concerning a disputed accident between the two cars. A third car struck the decedents while they were in the highway, killing them. The Appellate Division, First

Judicial Department, held that the decedents did not cease to be occupants under section 617 of the Insurance Law on account of a "temporary interruption in the journey of the vehicle, as when there is a mechanical failure and the passenger gets out to help or even to observe the work of the driver" *(supra,* p 455).

The question, consequently, is whether the meaning applied to an alighting passenger as an "occupant" within the provisions of section 617 of the Insurance Law must be impressed upon the provisions of the no-fault statute.

### III

The Trial Term, in a thoughtful opinion reviewing the precedents cited by the defendant, reasoned that the plaintiff had alighted from his vehicle during its disability and was standing in the highway in connection with its disability. Following the cases cited by the defendant, the Trial Term concluded that the plaintiff was an occupant of the disabled car and not a pedestrian. It necessarily held that the meaning ascribed to an occupant under the MVAIC Law attaches to the no-fault statute.

Whether the same term must be accorded the same meaning under different statutes entails a consideration of several factors—whether the statutes are *in pari materia,* whether the statutes have common aims and whether the public policy underlying the statutes demands similar treatment of the term.

Although the MVAIC Law and the no-fault statute reflect legislative concern over the injuries and losses suffered as the result of the use and operation of motor vehicles, there is no clear demonstration of a legislative will that the two articles are to be considered *in pari materia.* The articles are separated in time of enactment by 15 years (MVAIC Law—L 1958, ch 759; no-fault statute—L 1973, ch 13). Though this factor is not decisive, it suggests that the Legislature, in the absence of an express command that the term be similarly treated in both statutes, did not necessarily intend the same meaning to be used of words found in both statutes.

Moreover, there is no evidence of a legislative intent within the provisions of the second statute—the no-fault statute— that it should be interlocked with the MVAIC Law.[2] Nor is the

2. The reference in the no-fault statute to the provisions of the MVAIC Law

no-fault statute in any respect a revision of the existing legislative scheme of the MVAIC Law—a law which has its own rules of construction (cf. *Matter of Horchler,* 37 AD2d 28, 31-32, affd 30 NY2d 725).

The statutes do not have common aims in particular, as distinguished from the general aim to afford relief to victims of automobile accidents. The MVAIC Law, as disclosed by the declaration of legislative purpose (Insurance Law, § 600), was designed to provide a measure of financial security to persons injured by hit-and-run drivers, or by accidents caused by vehicles for which no insurance existed. In contrast, though the no-fault statute does not contain a statement of legislative policy, the statute was preceded by studies which indicated that the "distribution of compensation among accident victims under the tort system of reparation was unfair and inequitable for a number of reasons" *(Montgomery v Daniels,* 38 NY2d 41, 50-51), and that such victims were not limited to passengers of motor vehicles, but would include pedestrians as well *(Perkins v Merchants Mut. Ins. Co.,* 41 NY2d 394, 396). Hence, the two statutes have different purposes and were the result of different reasons of public policy (cf. *Matter of MVAIC v Queens Tr. Corp.,* 80 Misc 2d 669, 671).

■ The rules of construction of statutes are never absolute and must always be considered in the light of the surrounding circumstances; the same word may be used in varying senses depending on the intent of the Legislature *(Palmer v Van Santvoord,* 153 NY 612, 617-619; *Matter of City of Brooklyn,* 148 NY 107, 111-112; *People ex rel. Merz Co. v Waring,* 5 App Div 311, 316). "The same words which had been judicially construed before the section was amended assume a different aspect in their new setting in the amended section. The construction which the court held gave effect to the legislative intent as indicated in the original section might thwart the enlarged legislative purpose as indicated in the amended section" *(Matter of Curtin v City of New York,* 287 NY 338, 342).

We think, therefore, that we must seek the meaning of the provisions of the no-fault statute in the context before us,

(Insurance Law, § 671, subd 9) involves the meaning of an "uninsured motor vehicle", and to that degree manifests the intent of the Legislature that the same meaning of the term be used in both statutes. By the same token, it establishes the legislative understanding that words in the two statutes could be directed to have the same meaning, if that were desirable.

unencumbered by the construction placed on the provisions of the MVAIC Law.

## IV

■ We begin the construction of the no-fault statute with its purpose in mind—to allocate equitably the losses suffered by injured parties through the use and operation of automobiles and the burden of compensating such losses, including losses suffered by pedestrians (cf. New York Adopts No-Fault: A Summary And Analysis, 37 Albany L Rev 662, 671, 676). The statute unambiguously includes a pedestrian within the scope of a "covered person" (Insurance Law, § 671, subd 10). The later reference to "occupants of another motor vehicle" (Insurance Law, § 672, subd 1, par [a]) should not be construed to limit the protection intended to be afforded to pedestrians by the legislative definition of persons covered by the statute. That does not mean that the no-fault statute should be stretched out of shape to accommodate an injured party clearly excluded by the statute so as to grant him an unintended benefit; as always, the statute must be construed reasonably.

It is significant that the Legislature chose not to include in the no-fault statute the qualifying language of the MVAIC Law in referring to "occupants of another motor vehicle" (see Insurance Law, § 617).

Within the confines of the facts of this case, the statute may be reasonably construed to apply to the plaintiff as a pedestrian. At one time a driver of his car, he was at the time of the accident not engaged in the operation of his car but afoot, trying to warn approaching traffic. The plain purpose of the no-fault statute will not be distorted by a recognition of his status as a pedestrian, but rather advanced (cf. *Thomas v Travelers Ins. Co.*, 87 Misc 2d 136, affd 54 AD2d 608).

In short, we see no grounds for straying from the ordinary meaning of pedestrian in favor of a judicial gloss imparted on another word written in a different statute having a different purpose.

Accordingly, the judgment should be reversed and judgment directed in favor of the plaintiff, declaring him to be entitled to the benefits provided under the no-fault statute.

MARTUSCELLO, LATHAM and HAWKINS, JJ., concur.

Judgment of the Supreme Court, Queens County, entered June 23, 1977, reversed, on the law, without costs or disbursements, and it is declared that defendant is responsible to the plaintiff for the payment of first-party benefits under the no-fault statute.