OPINION OF THE COURT
Allan L. Winick, J.
Petitioner Colonial Penn Insurance Company moves for an order pursuant to CPLR 7503 (b) permanently staying an uninsured motorist arbitration demanded by James Curry, the respondent. A hearing was directed by a Justice of this court (Hart, J., Feb. 2, 1993) and after the hearing held on March 4, 1993, the court makes the following determination:
On August 10, 1990 respondent James Curry, with Steve Carey and two girls, came to the Assumption Church parking lot in Centereach, New York in an automobile. Upon arrival, they saw Robert Lovisio, another friend. He was outside his 1987 Toyota pick-up truck which was parked in the lot with the engine running. This truck was owned by Robert Lovisio and insured by respondent Travelers Insurance Co. Carey entered the vehicle and sat down on the driver’s seat. Respondent Curry was leaning in the driver’s door window conversing with Carey. One of Curry’s feet was resting on the running board of the truck while the other foot was planted on the ground. Lovisio was standing 10 feet away from his truck, talking to someone else. A second vehicle in the parking lot of the church backed up and struck Lovisio’s truck at the point where Curry was standing, one foot on the ground and one foot on the running board, fracturing Curry’s leg. The second vehicle then left the scene.
Curry’s counsel testified that he sent Curry’s hospital bill to Travelers. He stated that as far as he knew, the bill was paid because he had not received any denial of no-fault coverage from Travelers.
Curry now makes an uninsured motorist claim under his father’s automobile insurance policy which was issued by the Colonial Penn Insurance Company.
Colonial Penn moves to permanently stay the arbitration against it. Colonial Penn contends that Curry was "occupying” the Lovisio motor vehicle at the time of the accident and, therefore, Lovisio’s insurance company, Travelers, should be *284 responsible for any claim under an uninsured motorist endorsement. In addition, petitioner claims that Travelers paid Curry no-fault benefits and, therefore, considered Curry a "covered person” under its policy. As a result, it claims that Travelers should be estopped from denying responsibility for any claim under the uninsured motorist endorsement in its insurance policy.
The word "occupying” means "in or upon or entering into or alighting from” as defined in the Travelers insurance policy which was in effect on the date of the accident. The operative word here is "upon”. What does that word mean? "Upon” is defined in Webster’s New Collegiate Dictionary as "on, on the surface and on it”. "On” is defined in the dictionary as being used as a function word to indicate a position over and in contact with. "Contact” is defined as a union or junction of surfaces.
The question presented in this case is not that simple to answer. There appears to be no reported case which has a similar fact pattern. The Court of Appeals has on prior occasions interpreted "occupying”, however, the facts of this case are not similar to those decided.
In the case of Matter of Rice v Allstate Ins. Co. (32 NY2d 6), the claimant was walking between two automobiles, one of which the claimant had been driving, when an uninsured third motor vehicle struck one of the cars, pushing it into her. In that case, although claimant had just left one of the automobiles to deliver a paper to the driver of the other automobile, she had not intended to return to the car she had just left. There was no physical contact (union or junction) between claimant and either of the automobiles immediately prior to the time this impact by the third automobile occurred. The claimant was not "occupying” either vehicle.
The status of passenger is not lost even though he or she is not in physical contact with a vehicle, provided there has been no severance of connection with it, the departure is brief and the person is still vehicle-oriented with the same vehicle. However, the Rice Court would not go so far as to say one is "occupying” a vehicle merely because he or she is approaching it with intent to enter nor may such status be created if the vehicle the person is about to enter is part of a common expedition of two vehicles.
The Court stated that more than a mere intent to occupy a vehicle is required to alter the status of pedestrian to one of *285 "occupying”, and this is particularly so where there has been no previous passenger-oriented status. As a result, the Court of Appeals found that claimant was not occupying either vehicle.
As later cases developed, the definition of "occupying” has expanded. Not content with the literal and customary meaning of the word "occupying”, situations were included in "entering into or alighting from” in addition to presence in or upon the automobile. (See, Colon v Aetna Cas. & Sur. Co., 48 NY2d 570, 574.) The Legislature signaled to the courts (Motor Vehicle Accident Indemnification Corporation Law [hereinafter called MVAIC]) their intentions and as a result, the courts created a more expansive definition of "vehicle-oriented”. Accordingly, both the Legislature and courts have been disposed to stretch, rather than to narrow, the embrace of the critical word with respect to MVAIC. (Colon v Aetna Cas. & Sur. Co., supra, at 574.)
However, the Colon Court went on to state that they can only conclude that the Legislature made a conscious choice to give the word "occupant” a different meaning for no-fault purposes than that which is associated with the term for MVAIC purposes. (Colon v Aetna Cas. & Sur. Co., supra, at 574-575.) Therefore, the Colon Court concluded (at 574) that "occupant” as appearing in section 672 of the Insurance Law (no fault) should be ascribed its normal dictionary meaning.
However, this court’s determination is more reflective of the higher Courts’ MVAIC definition rather than the no-fault definition. The two statutes have different purposes and were the result of different aspects of public policy. (Colon v Aetna Cas. & Sur. Co., 64 AD2d 498, 503.)
In reviewing the prior cases which deal with the definition of "occupy”, this court was able to find only one case which is marginally close to the instant fact pattern. In that case, Lokos v New Amsterdam Cas. Co. (197 Misc 40, affd 197 Misc 43), at the time of the impact by another vehicle, the claimant was in physical contact with his own vehicle, or the subject vehicle. That case predates the no-fault and the MVAIC statute. The language of that insurance policy created four categories when defining "occupying”, each in the disjunctive. Initially, the court found little or no problem with the definition of "occupying” a motor vehicle. The bulk of the cases interpret what is meant by "entering into” or "alighting from” a motor vehicle. The problem arises when the courts *286 are called upon to determine what is meant by "upon” a motor vehicle.
In the Lokos case (supra), the bumper of the claimant’s automobile had partially fallen to the ground during operation. The operator of the automobile, Arthur Lokos, stopped and alighted from his automobile. He was in the process of tying the bumper back onto his car when he sustained injuries from the impact of another car hitting his car.
The court answered the question as to whether plaintiffs injuries arose out of the use of the automobile while he was "upon” it. An examination of the word "upon” indicates its meaning is related to the idea of use of the automobile. Such meaning is exclusive of other risks intended to be covered by the words "entering” and "alighting”. The court which decided the Lokos case (supra) queried whether the definition of the word "upon” is so narrow as to require that the entire weight of a person’s back must be resting on or supporting the car in order for that person to be "upon” the car. Considering the usual positions of a person in relation to a car in use, and the fact that enumerated risks include acts of being upon the automobile in the sense of resting upon or being supported by it, it is reasonable to give the term a broader meaning including some acts in which the person is merely in contact with the car. This is not to say that the mere contact is sufficient. (Lokos v New Amsterdam Cas. Co., supra, at 42.) In the Lokos case, the facts go beyond mere contact. The plaintiff in that case had his hands on the bumper of the car at the time of the accident. The court believed that what is needed is more than mere physical contact with the automobile in the course of its use and so found. However, in Lokos, the claimant was "passenger-oriented” because, but for the accident, he had full intention of returning to the vehicle. Similarly, just prior to the accident, he had just alighted from the vehicle. His departure from the vehicle was only for a short, limited duration in order to fix the bumper.
Unlike Fischer v Aetna Ins. Co. (65 Misc 2d 191), where the court found that the plaintiff was not occupying his automobile at the time of the accident (plaintiff was 25 feet from his automobile rendering first aid to a man in the street, and stood up and was walking to a fire call box when he was struck), in the instant case the plaintiff had no intention of entering the vehicle nor had he just left it, although he had direct physical contact with the vehicle when he was struck. He was just standing with one foot on the running board, *287 talking to the occupant of the driver’s side seat of the truck, and that person had not been driving the truck nor was there evidence that he intended to do so.
There is a lack of precedent with respect to the factual background of the instant case.
The general language of the Court of Appeals in Matter of Rice (supra) is helpful in making a determination in this case. The Court of Appeals (at 11) stated that "[m]ore than a mere intent to occupy a vehicle is required to alter the status of pedestrian to one of 'occupying’ it; and this is particularly so where there has been no previous passenger-oriented status”. The majority of the cases are concerned with a person who just recently alighted or was about to enter a motor vehicle. With respect to these cases, the court’s decision as to whether the person is covered depends upon whether that person was passenger-oriented. In our set of facts, such a finding cannot be made. Rather, all we have here is mere contact, a stepping upon the vehicle. There is no previous passenger-oriented status nor is there any indication that he was about to become a passenger in the truck. Any contact that Curry had with this vehicle was unrelated to its operation as a vehicle and not passenger-oriented.
Sometimes a standard dictionary definition is a good source of assistance in the interpretation of language being considered. (Lokos v New Amsterdam Cas. Co., supra, at 42.) Such authority can be of great value as a guide to the true meaning of a word in a particular context. However, its use in the instant case would be illogical since there is no connection by the claimant with the truck, creating a passenger-oriented status.
In addition, normally where an insurer attempts to limit liability by use of an ambiguously worded term which is subject to more than one reasonable construction, the courts will construe it strictly against the insurer. (Sperling v Great Am. Indem. Co., 7 NY2d 442.) However, it is unreasonable to reach the conclusion that the word "upon” is ambiguous in this context. It is necessary for a claimant first to be found to be "passenger-oriented” with respect to the vehicle prior to any finding that he is "upon” the vehicle.
We conclude, therefore, that claimant was not "occupying” the truck.
Finally, the court will address the estoppel argument. The testimony revealed that as far as claimant’s attorney *288 knew, Curry’s hospital bill was paid by Travelers. He makes this assumption since he had not received any denial of the no-fault benefits from Travelers. However, there is no direct testimony that the bill was paid. For the claimant to rely on estoppel, he must not only have believed and relied upon the conduct of Travelers, he must also have been induced to act (or refrained from acting) in such a manner so as to change his position or status from that which he would have held. (See, Wills v Investors Bankstocks Corp., 257 NY 451, 458.) It is the essence of asserting estoppel that claimant must have been influenced to change his position to rely on the conduct of Travelers. (Byrne v Barrett, 268 NY 199, reh denied 268 NY 630.) No such evidence is demonstrated here. Claimant’s position is exactly the same whether payment was made or not.
Therefore, for the reasons stated, petitioner’s application to permanently stay the arbitration is denied.