HILTON v. COMMON COUNCIL OF GRAND RAPIDS.

1. ELECTIONS—CANVASSING BOARD—MANDAMUS.

The circuit court may, in its discretion, entertain an application for *mandamus* requiring the common council, as a board of canvassers, to canvass the returns of votes for alderman, and issue a certificate to the relator, without a previous application by the relator to the board for such certificate, where it is convinced that such request would not have availed.

2. SAME—RECOUNT—ESTOPPEL.

A candidate whose election is shown by the face of the returns to the canvassing board is not estopped to question the authority of the board under Act No. 208, Pub. Acts 1887, to recount the votes in certain precincts upon the petition of his rival, because he petitioned for a like recount in some of the other precincts.

3. SAME—OFFICE OF ALDERMAN.

Act No. 208, Pub. Acts 1887, providing for a recount in certain cases of the votes cast at any election, on petition of the candidate aggrieved, does not apply to a contest over the office of alderman of the city of Grand Rapids, since the common council of said city is by charter made the judge of the election and qualification of its own members.

4. SAME—CONSTRUCTION OF CHARTER.

Title 2, § 20, of the Grand Rapids charter (Act No. 282, Local Acts 1877), which provides that, on the Thursday following a municipal election, the council of the preceding year shall convene, and determine and certify the persons elected to the several offices, must be construed with title 10, § 4, declaring the common council to be the judge of the election and qualification of its own members, and held not to relate to the office of alderman.

*Certiorari* to Kent; Adsit, J. Submitted April 27, 1897. Decided April 30, 1897.

*Mandamus* by Charles A. Hilton to compel the common council of the city of Grand Rapids to canvass the original returns of the votes cast for the office of alderman, and to issue a certificate of election in accordance therewith. From an order granting the writ, respondent brings *certiorari.* Affirmed.

*Kingsley & Kleinhans* ( *William Wisner Taylor* and *Peter Doran,* of counsel ), for relator.

*Henry J. Felker* ( *Moses Taggart, Alfred Wolcott,* and *Gerrit H. Albers,* of counsel ), for respondent.[1]

PER CURIAM. The relator applied to the circuit court for *mandamus* requiring the respondent to canvass the returns of the votes cast in the Fourth ward for the office of alderman, and to issue a certificate based upon such returns, the returns showing that relator received a majority of the votes cast. The petition alleged that the members of the common council, sitting as a board of canvassers, had entered upon a recount of the votes, assuming to act under Act No. 208, Pub. Acts 1887. The return to the application for *mandamus* showed that the recount proceeded in some of the precincts upon the application of relator. These precincts were not the ones in which it was claimed that the board of canvassers had thrown out votes sufficient to defeat relator, and elect his opponent. The circuit judge granted the writ, and the case is here for review on *certiorari.*

It is first contended that the action is premature, inasmuch as the petition failed to state that relator had demanded of the council that his certificate, based upon the face of the returns, issue. But it appears that the recount upon which the committee was engaged was not com-

---

[1] *Mark M. Powers* also filed a brief as attorney for William F. Parish, the opposing candidate.

pleted until a late hour Saturday night. The regular meeting of the council was on Monday evening, and the petition of relator was filed Monday afternoon. If such a request had been presented, the council could have taken action upon the committee's recount before the relator would have had an opportunity to present his application. We think it was within the discretion of the trial court to proceed without previous application to the board, if convinced that such request would not avail anything.

It is further claimed that the relator is estopped from questioning the regularity of the work of the committee, inasmuch as he himself petitioned for a recount in some of the precincts. A similar contention was made in *Belknap* v. *Ionia Board of Canvassers*, 94 Mich. 516, in which the relator had petitioned for a recount in the county of Kent, and his opponent had petitioned for a recount in the county of Ionia. It was contended that he could not question the recount in either of the counties, but it was said:

"It is, however, alleged that by the original returns relator was elected. His right, therefore, to a certificate, did not depend upon the recount in Kent, and the petition filed in Ionia county was not predicated upon nor rendered necessary by the recount in Kent. Mr. Richardson was in no sense misled or prejudiced by either the recount in Kent or the failure to object to the recount in Ionia, instituted by himself."

We think that case decisive of this question.

Section 4, tit. 10, of the charter of 1877 (Act No. 282, Local Acts 1877), provides that "the common council shall be the judge of the election and qualification of its own members, and to decide upon and determine contested elections of members thereof." It has been held in numerous cases that Act No. 208, Pub. Acts 1887, does not apply to a contest over an election to an office as a member of a body which, by law, is made the judge of the qualifications of its own members. This was held in

*Naumann* v. *Detroit Board of Canvassers*, 73 Mich. 255, and was reaffirmed in *Wheeler* v. *Manistee Board of Canvassers*, 94 Mich. 448, and *Belknap* v. *Ionia Board of Canvassers*, Id. 516.

It is suggested that the present council is to be the judge of the election of the members of the body, and decide and determine upon contested elections. The reading of this clause would not indicate such a purpose. Title 2, § 20, reads as follows:

"The common council of the preceding year shall convene on the Thursday next succeeding such election, at 2 o'clock in the afternoon, at their usual place of meeting, and the statement of votes filed with the clerk of the city by the inspectors of election shall be produced by said clerk, when the common council shall forthwith determine and certify, in the manner provided by law, what persons are duly elected at the said election to the several offices respectively."

It is contended that this latter section confers upon the present council the authority not only to canvass the returns, but to determine what persons are elected to the several offices respectively, and that this implies the right to proceed in any manner provided by law, for the purpose of ascertaining what candidate has received the greatest number of votes. We think, however, that this section should be construed in connection with title 10, § 4, and, so construed, must be held to relate only to those officers the authority to adjudge and determine of whose election and qualification is not vested elsewhere, and that the case must be held to fall within *Naumann* v. *Detroit Board of Canvassers*, *supra*. Reference is made by counsel for respondent to the case of *Weston* v. *Kent Probate Judge*, 69 Mich. 600, where it is assumed in the opinion of the court that the preceding council is the judge of the election of the members of the new body. This was not a point in the case, nor was it a case in which the council had assumed to act under Act No. 208, Pub. Acts 1887. The single question in the case was whether, under Act No. 293, Pub. Acts 1887, the probate

court had power to canvass the vote. It was held that such power did not exist, upon a ground entirely consistent with that announced later in *Naumann* v. *Detroit Board of Canvassers, supra,*

We think the order of the circuit court should be affirmed.