ANDERSON *et al.*, commissioners, *v.* NEWTON *et al.*, and *vice versa.*

1. A bill of exceptions which sets forth a general complaint of the granting of an injunction will not be dismissed on the ground that it does not contain a legally-sufficient assignment of error, if it be practicable for this

court, looking to both the bill of exceptions and the transcript of the record, to ascertain what questions were passed on by the trial judge and what rulings the plaintiff in error seeks to have reviewed.

2. The carrying out of a contract to build a court-house should not be enjoined at the instance of taxpayers on the ground that the county authorities failed to observe the requirements of the Political Code, §345, when it appears that there has been a substantial compliance with its provisions respecting an advertisement for bids, putting the public on notice of the "extent and character of the work to be done and the terms and time for payment."

3. County commissioners have a broad discretion in passing upon the necessity of erecting suitable buildings for county purposes and selecting an appropriate site therefor; and the reviewing power of the judge of the superior court should be exercised with caution, and no interference had unless it·be manifest that the county authorities are abusing the discretion with which they are vested, or that the tax which they propose to levy to meet the cost of construction is exorbitant and will therefore impose an unauthorized hardship upon the taxpayer. That he may be also subject to municipal taxation affords no reason for enjoining the collection of a county tax which is not itself exorbitant, inasmuch as the needs of the county are not to be suffered to go. unsatisfied because of any independent burden upon the taxpayer which he assumes by becoming a resident of a town or city.

4. Whether the funds with which to meet the expenditure shall be raised by a tax for the current year, or by affording the voters of the county an opportunity to authorize the issuance of bonds at an election duly held for that purpose, is a matter solely for the determination of the county authorities, and their decision as to this matter is not subject to review by the judge of the superior court, who has no power to order an election or to delay action on the part of the commissioners till they refer to the voters of the county the question of the expediency of a bond issue.

Argued June 20, — Decided July 17, 1905.

Injunction. Before Judge Lewis. Morgan superior court. May 30, 1905.

On March 16, 1905, the commissioners of Morgan county advertised for bids to erect a new court-house for that county, the cost of the same not to exceed $40,000, including furniture, if built on what was known as the "jail lot," or $46,000, including furniture, if erected on the present site of the court-house. In the advertisement the general character of the building to be erected, its size, and the materials of which it was to be built were stated, and reference was made to minute plans and specifications of file in the office of the county commissioners, according to which the building was to be erected. The advertisement also provided that the construction of the building should com-

33

mence on May 22, 1905, and that it should be completed by December 28 of that year, payments for the work and materials to be made to the contractor as the structure reached certain specified stages of completion, the last payment to be made when the building was fully completed and was accepted by the architects and the county commissioners. A further stipulation was that each bidder should deposit with his bid a certified check for $1,000, payable to the county commissioners, as a guarantee that he would enter into a contract with the county upon the terms of his bid within twenty days after its acceptance, and give a bond with security for the faithful performance of his contract, in double the amount of the contract price of the building; and that, upon his failure to enter into such a contract and give such a bond, the check was to be retained by the county commissioners and forfeited as liquidated damages. On April 20, 1905, the county commissioners awarded the contract to the Winder Lumber Company, its proposal to erect the new court-house on the jail lot for $39,780, including all furniture called for by the specifications, being the lowest and best bid received. Upon the same day, a written contract providing for the erection of the building was duly executed by the representatives of both contracting parties, but up to May 15, 1905, no bond was furnished by the contractor. On that day John T. Newton and other citizens and taxpayers of Morgan county instituted an equitable proceeding in the superior court of that county, the purpose of which was to restrain the county authorities from proceeding under this contract to build a new court-house. The complainants alleged, among other things, that the advertisement for bids was legally insufficient, being too indefinite in certain particulars to put bidders and the public at large upon notice of the terms and conditions upon which the county commissioners proposed to award a contract for the building of a new court-house; that the present structure, while not commodious, was in perfect repair and was adapted to all immediate needs of the county; that its financial condition was not such as to warrant the expenditure necessary to procure a building of the kind which the commissioners proposed to erect, and to levy a direct tax sufficient to meet this expenditure would be so burdensome and oppressive as to amount to a confiscation of the property of the citizens of the county,

nine tenths of whom were opposed to the levy of a tax for this purpose; that the county commissioners did not in good faith intend to raise the necessary amount by a tax imposed for the current year, but to issue county warrants to the contractor which would represent a "floating indebtedness" against the county, which its authorities could not legally create, but which they proposed to meet by ordering an election to vote on issuing bonds to provide the means of paying off this indebtedness after it was incurred, contrary to the provisions of the constitution; and that in no event should the county commissioners be permitted to give effect to the bid of the Winder Lumber Company, it not being in accord with the terms of the advertisement nor advantageous to the county, and that company having forfeited its deposit of $1,000 by failing to enter into a written contract and give the required bond within the time limited, which forfeiture the county commissioners' ought not to be allowed to waive. The complainants prayed that the county commissioners be enjoined from proceeding to build the proposed new court-house till "bids shall be made and accepted after proper notice and advertisement, and until a vote for the issue of bonds to build said court-house shall have lawfully been held;" and that, "in the supervisory powers of the court, the levy of a direct present tax this year to pay for said court-house be enjoined as unnecessary and exorbitant, at least till said bond election shall have been held."

The Winder Lumber Company, which was made a party defendant, filed an answer in which it offered the following explanation of its failure to furnish a bond within twenty days after the contract was awarded: Immediately after its bid was accepted on April 20, its manager, J. B. Williams, was approached by the local agents of a guaranty company, who solicited the privilege of furnishing the bond, but for some reason failed to furnish him with the application therefor till April 26, when he at once signed and returned it to them. On May 10, they notified him that their company could not write the bond; whereupon he promptly took steps to have a bond written by another company, which executed the required bond on May 16, and the same was mailed to the board of county commissioners on May 18, being received by the board three or four days before work was to be commenced on the building, and being still retained by

the board. Williams was induced to procure this bond by the assurance of the chairman of the board that the bond would be accepted if tendered before the 22d of May, the day when work was to begin. The defendant company also alleged that it was ready and willing to comply with its contract, if permitted to do so; but stated very frankly that it was perfectly indifferent as to whether it was allowed to build the court-house, the delay caused by the litigation having already damaged the company and worked a hardship upon it. The company prayed that the court decree that there had been no forfeiture of the deposit of $1,000, and that the board of county commissioners be required to return the check for that amount, as well as the bond furnished by the company, the board not having accepted the bond nor indicated whether or not it proposed to do so. The county commissioners filed an answer, in which they took issue with the complainants as to the necessity of having a new court-house, and wherein they insisted that the steps taken by the board to procure a suitable building were in all respects legal and proper, especially in view of the fact that on January 18, 1905, an election had been held in the county for the purpose of determining whether bonds should be issued to raise the necessary funds with which to build a new court-house, and the requisite number of votes to authorize the issuance of bonds had not been polled. The commissioners further answered, that while it was their intention to issue county warrants in payment for the building. as the work thereon progressed, these warrants were all to be paid on or before December 28, 1905, out of funds to be raised by the levy of a tax sufficient to meet these obligations; and that no debt against the county such as is prohibited by the constitution would be created, nor would the tax imposed amount to a confiscation of the property of the citizens, though doubtless the burden upon them would be less were they willing to authorize the issuance of bonds. As to the failure of the contractor to furnish a bond within the time limited in the advertisement for bids, the commissioners replied that it was within their discretion to waive the forfeiture and allow the contractor to comply with the contract, though, owing to the restraining order served upon them, they had not undertaken to pass upon the sufficiency of the bond which had been mailed to them by the contractor before the date upon which

work was to have commenced on the building, nor had they in any way waived any right of the county to insist upon the forfeiture.

At the interlocutory hearing much evidence was introduced, pro and con, as to the expediency of building a new court-house, in view of the condition of the structure then in use and its capacity to serve the present needs of the county. After considering the evidence bearing upon this and other issues involved, the court passed an order reciting that, in the opinion of the presiding judge, "the county commissioners have the right to decide whether a new court-house should be built or not, and have the right to decide where the same should be located," as well as the "right, if it become necessary so to do, to levy a tax this year to pay for the same;" but the court is, "however, of the opinion that no such urgent necessity exists as to justify, under the circumstances of this case, the levy of such a tax before the people have had another opportunity to vote on bonds. While the court sees no irregularity [in] the making of a contract with the Winder Lumber Company which might not be waived, said company consenting in open court to setting the same aside, it is therefore ordered that any further prosecution of the same on the part of the parties thereto be enjoined and restrained, and that the said commissioners be enjoined from longer detaining the $1,000.00 and the indemnity bond deposited with said contract. It is further ordered that the said commissioners be restrained from entering into any contract to build said court-house, or from levying any tax to pay for the same until they shall have first submitted to the people, as provided by law, the question whether bonds shall be authorized to build said court-house." To the granting of this injunction the county commissioners excepted; and by cross-bill of exceptions the complainants assign error upon the order of the court in so far as it sets forth the decision of the court that it was within the power of the county commissioners to determine the necessity of building a new court-house and to choose the site thereof, as well as to levy a tax to raise the amount necessary to erect the building, and that there was no irregularity in the steps taken in advertising for bids and awarding the contract to the Winder Lumber Company.

*George & Anderson,* for the county commissioners.

*Williford & Middlebrooks, S. H. Sibley,* and *C. H. Brand,* contra.

EVANS, J. (After stating the facts.) 1. On the call of the case in this court, a motion was made to dismiss the main bill of exceptions, on the ground that it contained no legally sufficient assignment of error. The plaintiffs in error therein complain, in general terms, that the court erred in holding, (1) that there was no such urgent necessity as justified the levy of a tax before the people had been afforded another opportunity to vote on the issuance of bonds; and (2) for this reason the commissioners should be enjoined from carrying into effect the contract made with the Winder Lumber Company, notwithstanding there was no irregularity connected with that contract which the commissioners were not authorized to waive. While the exceptions to the judgment of the court may not be altogether orthodox, in that no specific reason is assigned why the rulings of the court were erroneous, yet we think they are legally sufficient, tested by the loose practice to which our General Assembly has lent its countenance. The Civil Code, § 5569, declares that this court shall not "dismiss any case for any want of technical conformity to the statutes or rules regulating the practice in carrying cases to [this] court, where there is enough in the bill of exceptions or transcript of the record presented, or both together, to enable the court to ascertain substantially the real questions in the case which the parties seek to have decided." "In other words, an assignment of error will be sufficient if this court, viewing it in the light of the record, can ascertain substantially what questions the trial court passed on, and which are sought to be reviewed here." *Turner* v. *Alexander,* 112 *Ga.* 821. In an endeavor to follow this legislative mandate, this court, in *Carter* v. *Jackson,* 115 *Ga.* 679, laid down the rule that "A general exception to the judgment, and a specific assignment of error on the special ruling upon which the judgment was based, is sufficient to present for consideration the question whether the court erred in the special ruling complained of, and in entering the general judgment" in accordance with such ruling. In *Atlanta Ry. Co.* v. *Atlanta Rapid Transit Co.,* 113 *Ga.* 481, the complaint made of the refusal to grant an injunction was that the judgment of the court

was contrary to the law and evidence in the case, without assign-
ing any reason why this was so; and still the assignment of
error was deemed sufficient to withstand a motion to dismiss the
writ of error. In *Wyatt* v. *Crowder*, 112 *Ga.* 168, this court
was able to ascertain from the record that the refusal of an injunc-
tion was necessarily based upon the opinion entertained by the
judge that the petition, taken as true, did not entitle the plaintiffs
to the relief prayed for; and this being so, a general complaint
that the court erred in denying an injunction was held to be a
legally sufficient assignment of error. Likewise, where the direc-
tion of a verdict has been characterized as erroneous, without any
reason being assigned why the judgment of the court was wrong,
we have retained writs of error upon the bare supposition that the
plaintiff in error intended to attack the judgment on the ground
that, in view of the pleadings and the evidence submitted in
support thereof, the court committed an error of law in holding
that the party in whose favor the verdict was directed was
entitled to prevail. *Phillips* v. *Railway Co.*, 112 *Ga.* 197;
*Howell* v. *Pennington*, 118 *Ga.* 496-7; *Taylor* v. *McLaughlin*,
120 *Ga.* 705. In the present case, the pleadings disclose what
issues of fact were presented for determination, and the bill of
exceptions contains a brief of the evidence offered in support of
the contentions of the respective parties. We are thus in a posi-
tion to determine by what rules of law the presiding judge should
have been guided in the exercise of his discretionary powers, and
the written order which he passed sets forth his decision upon
each of the several questions on which he undertook to pass.
The county commissioners acquiesce in the correctness of some of
the rulings therein made, but complain that the rulings made on
some of the questions passed on were erroneous. We therefore
are informed that they have a more or less definite consciousness
that the rulings excepted to are wrong, and we are doubtless
warranted in assuming that they are attacked on the ground that,
in view of the undisputed facts appearing on the trial and the law
applicable thereto, the court incorrectly held it was within its
province to grant an injunction for the reasons set forth in the
order which it passed. Upon this assumption the motion to dis-
miss the writ of error is overruled; and we will upon this assump-
tion endeavor to deal with what we conceive to be the actual

grounds upon which the parties enjoined complain that their liberty of action in the premises has been interfered with.

2. The court correctly held the advertisement for bids to erect a new court-house was not, for any of the reasons urged by the complainants, too uncertain and indefinite to put bidders and the general public on notice of the terms and conditions upon which the structure was to be built. The advertisement expressly provided that bids were to include the furnishing of furniture for the building, and referred to plans and specifications on file in the office of the board of county commissioners for minute information as to the character of the structure and the kind and quantity of furniture with which it was to be fitted. That bids were invited for the construction of a court-house on a given site not to exceed a stated amount, and also for the erection of the building on a different site at a cost not exceeding another stated amount, did not render the invitation confusing. Separate advertisements asking for separate bids would not better have given notice of the intention of the commissioners to decide whether, after the cost of erecting the building on each of the sites mentioned had been ascertained, the contract would be let to the lowest bidder proposing to erect the court-house on the "jail lot," or to the lowest bidder proposing to erect the structure on the site on which stands the building now used as a court-house. We can not conceive that any bidder who had sufficient intelligence to erect such a building was deterred from bidding simply because he did not understand that the commissioners wished to ascertain, before awarding the contract, what would be the relative cost of erecting the new court-house on the present site as compared with the cost of erecting it on the "jail lot." The times and the terms of payment of the contract price were stated with all necessary particularity; that full payment was to be made within the current year was stated beyond peradventure. County warrants were to be issued as the work progressed from one stage of completion to another, the same to be "due and paid on or before Dec. 28, 1905;" presumably, it was contemplated that these warrants would be paid promptly as issued; certainly there is no suggestion to the contrary, but an express stipulation that they were to be paid "on or before" the date fixed

for the completion of the building. A legal promise of payment is made, and it can not be assumed that the commissioners had no intention of performing this promise. Though there might be no secret of the fact that the county owed certain outstanding indebtedness and had little or no ready funds in its treasury, this circumstance in no way negatived the intention or ability of the commissioners to make the proposed payments; it was at least within their power to pay, for they were vested with authority to raise the necessary funds by the levy of a direct tax. If any one was deterred from bidding because he doubted the fulfillment of the promise to pay, it must have been because he had reason to believe the county would be a debtor he feared to trust, and not because the advertisement inviting his trust and confidence was itself ambiguous or in any respect defective.

3. Equally clear is it that the court correctly held that the board of county commissioners was vested with discretionary power with respect to deciding whether or not the erection of a new court-house was a present and urgent public necessity, and, if so, upon what site it should be built. The evidence authorized, if it did not demand, the further conclusion that the commissioners were acting within the powers conferred upon them by law, in taking the steps which they pursued in carrying out their intention of providing the county with a suitable court-house by letting out the contract for the erection thereof to the Winder Lumber Company. Indeed the proposed tax was not shown to be a burden which they could not lawfully impose upon the property owners of the county, nor was it shown that the court could properly, for any other reason, interpose and enjoin the carrying out of the project upon the idea that the county authorities were not acting wholly within the scope of the discretionary powers expressly conferred upon them by law. " The discretion vested in the county authorities must be from the nature of the case a broad one; and therefore the reviewing power of the judge of the superior court must be exercised with caution, and no interference had unless it is clear and manifest that the county authorities are abusing the discretion vested in them by law." *Commissioners* v. *Porter Mfg. Co.,* 103 *Ga.* 617. The levy of an additional tax of two per

cent. or less, when necessary to raise the amount required, can not be considered an exorbitant assessment or unauthorized burden imposed on the taxpayer. *Dyer* v. *Erwin,* 106 *Ga.* 845, 849. The fact that he may also be liable to municipal taxation affords no ground for suffering the needs of the county to go unsatisfied; however burdensome municipal taxation may be, the necessity of providing the county with a suitable court-house should be met, if this can be done by levying a county tax which is not itself exorbitant; the citizen must forego the luxury of city life, if unable to bear its incidental expense and still perform the obligations of a citizen which he owes to the county. The Political Code, § 396, conferring upon the judge of the superior court jurisdiction to review the action of the county authorities, does not contemplate that the extravagances of a municipal corporation shall defeat the power of such authorities to supply the wants of the county.

4. The presiding judge having properly declined to grant an injunction on the ground that the building of the new court-house was unnecessary, or because the proposed tax was exorbitant, as claimed, it only remains to inquire whether it was within his province to determine the expediency of taking immediate action or postponing action till the people could be afforded another opportunity of voicing their opinion as to the advisability of issuing bonds for the purpose of raising funds with which to erect the contemplated building. The county commissioners had the discretionary power to decide whether the requisite funds should be raised by a tax imposed for the current year, or by the issuance of bonds, provided authority to issue the same could be secured from the voters of the county at an election duly held in accordance with the provisions of the constitution. *Elliott* v. *Gammon,* 76 *Ga.* 766. An election had previously been held, at which the people declined to authorize the issuance of bonds; and the commissioners doubtless exercised a wise discretion in determining to no longer delay the matter, but to presently meet the emergency by awarding a contract for the construction of the building and levying a tax to meet the necessary expense. It was not within the power of the court to override their decision as to this matter, even though the judge may have been justified in his conclusion that the necessity of erecting a suitable building

was not so "urgent" as to make improper the delay incident to holding another election. The only question he was called on to decide was whether the necessity existed, and, if so, whether the proposed tax would be exorbitant. The commissioners having determined to exercise their power to levy a tax, the court had no power to order an election, nor any authority to delay action on the part of the commissioners in order that the people might vote on the advisability of issuing bonds.

*Judgment on main bill of exceptions reversed; on cross-bill affirmed. All the Justices concur, except Simmons, C. J., absent*