MATTHEWS *et al.* v. HUSSEY *et al.*

The act of 1912 (Acts 1912, p. 472), creating a board of commissioners of roads and revenues in and for the County of Toombs, conferred upon that board jurisdiction over county matters and county finances, so as to authorize it to contract for the building of a county court-house.

No. 796. NOVEMBER 15, 1918.

Petition for injunction. Before Judge Hardeman. Toombs superior court. January 6, 1918.

*A. C. Saffold, W. J. DeLoach, W. M. Lewis,* and *Pattillo & Jackson,* for plaintiffs.

*Giles & Sharpe* and *James K. Hines,* for defendants.

FISH, C. J. The question for decision in this case is whether the act of 1912 (Acts 1912, p. 472), creating a board of commissioners of roads and revenues in and for the County of Toombs, conferred upon that board jurisdiction over county matters and county finances, so as to authorize it to contract for the building of a county court-house. The act (sec. 5) declares that "said commissioners shall have exclusive jurisdiction and control over the county affairs as provided for in the Toombs County road laws,

and to exercise such other powers as are granted by law, or as may be indispensable to their jurisdiction over county matters or county finances." "The Toombs County road laws" referred to are contained in the act of 1907 (Acts 1907, p. 343) and the act of 1909, amendatory thereof (Acts 1909, p. 458), and relate exclusively to matters connected with the roads and bridges of the county. The act of 1912 authorizes the board "to exercise such other powers as are granted by law, or as may be indispensable to their jurisdiction over county matters or county finances;" it provides for the election of three commissioners, and declares (sec. 6) that two of them shall constitute a quorum "and must concur to pass any order, or let any contract, pledge the county credit, grant or allow any claim or charge against the county;" it gives the board (sec. 7) the right to appoint a clerk thereof, and makes it his duty to attend all meetings of the board, and "to keep on file and to preserve all papers relating to its business; to keep in a special book a statement of all taxes levied and for what purposes minutely specified and designated. . . He shall also keep an itemized statement of all accounts paid by the board of commissioners, and shall show what fund is liable for the payment of said accounts. He shall also keep a book to be known as his record of county vouchers, in which shall be kept a complete record of warrants or vouchers drawn on the treasury of said county, which record shall show by proper entries the fund from which same is payable, the person to whom payable, the date of record, and the amount of said voucher or warrant. It shall be his duty to sign all warrants and vouchers, but he shall in no instance issue any warrant or voucher until same shall have been countersigned by the chairman of the board of said county commissioners in and for said County of Toombs. . . The treasurer of Toombs County shall not pay any warrant, voucher, or charge against said County of Toombs, unless the same has been registered and certified in compliance with this section, except such as bear date prior to the induction and qualification into office of said board of county commissioners of Toombs County." It further provides (sec. 8), that "said commissioners shall, before each term of the superior court in February and August of each year, have prepared and submitted to the grand jury of said county a complete statement in writing of the condition of the county property, finances, buildings, and public

roads and bridges, and an itemized statement of all amounts collected and disbursed from all sources in behalf of the county," and turn over to the grand jury at such terms of the court "all the books and records in connection with their office." The ninth section requires the board to hold a meeting on the first Tuesday in each month.

These provisions of the act clearly indicate the purpose to confer upon the board jurisdiction over county matters and county finances other than those confined to the roads and bridges of the county, and to confer upon it the authority to contract for the building of a county court-house, and to "pledge the county credit" for the erection thereof.

The Civil Code, § 399, declares that "The county buildings are to be erected and kept in order and repaired at the expense of the county, under the direction of the ordinary, who is authorized to make all necessary contracts for that purpose." And the language of section 387 is, "Whenever it becomes necessary to build or repair any court-house, jail, bridge, causeway, or other public works in any county in this State, the officer having charge of the roads and revenues and public buildings of such county shall cause the same to be built or repaired by letting out the contract therefor to the lowest bidder, at public outcry, before the court-house door, after having advertised the letting of said contracts as hereinafter provided," etc. The jurisdiction formerly exercised by the ordinary, referred to in these code sections, is the jurisdiction which the act of 1912 evidently intended to confer upon the board of commissioners of roads and revenues of Toombs County when in conferring jurisdiction upon it the following language was used: "to exercise such other powers as are granted by law, or may be indispensable to their jurisdiction over county matters or county finances."

The court did not err in refusing to grant an interlocutory injunction restraining the board of commissioners from entering into a contract in behalf of the county for the rebuilding of a county court-house, to be paid for out of the insurance collected for the former court-house, which had been destroyed by fire, supplemented, if necessary, with other funds legally available for that purpose.    *Judgment affirmed.    All the Justices concur.*