*E. M. Price,* contra.

---

MANRY *et al.,* commissioners, *v.* GLEATON *et al.*

1. Civil Code § 400, providing that "it is the duty of the ordinaries to erect or repair, when necessary, their respective court-houses and jails," etc., does not deprive the officers having jurisdiction of the county affairs of all discretion as to the manner of providing a court-house or the character of the building or its equipment. On that subject the county authorities have a broad discretion, which should not be disturbed by the courts except cautiously, nor unless it is clear and manifest that the county authorities are abusing the discretion vested in them by law.

2. This is a proceeding for the writ of mandamus to compel the county authorities "to build and equip" a court-house at a new county-site. The petition alleged that the county did not have a court-house; that the respondents were under an absolute duty to build and equip a court-house at the new county-site; that citizens of the town constituting the new county-site had offered a donation of $26,000, which was sufficient to build a court-house; that the respondents had refused the donation, and had refused on demand therefor to build a court-house.   Other allegations of the petition were to the effect that the respondents had made provision for "temporary quarters" for the courts, and that these were inadequate.   *Held,* that it was a matter of discretion of the officers as to whether they would at that time "build" a court-house and whether they would build one to cost the amount alleged, or whether they would provide a court-house temporarily by other means.   The allegations of the petition were insufficient to show ·that the officers abused their discretion.

3. Where the county-site of a county has been changed from one town to

Counties, 15 C. J. p. 533, n. 79; p. 534, n. 82.
Mandamus, 38 C. J. p. 690, n. 1; p. 756, n, 24, 25; p. 878, n. 84.

another, and before a permanent court-house has been provided by the county authorities a movement is commenced for an election to determine whether the county-site should again be removed, and there is reasonable probability that the county-site will be removed, it is not an abuse of discretion upon the part of the county authorities to refuse to build a court-house at the county-site while the result of the effort to remove the county-site remains doubtful.

4. Under application of the foregoing rulings the trial court erred in overruling the demurrer to the petition, and in his judgment striking certain portions of the answer, and in granting a mandamus absolute.

No. 5583.   June 25, 1927.

Mandamus.   Before Judge Custer.   Calhoun superior court. June 8, 1926.

After an election held in February, 1922, an act was approved July 27, 1923 (Acts 1923, p. 217), removing the county-site of Calhoun County to Arlington.   On March 12, 1926, mandamus proceedings were instituted by certain citizens and taxpayers against the county board of roads and revenues, to compel them to erect and equip a court-house at Arlington.   In paragraph 3 of the petition it was alleged: "That the county is without a court-house . . wherein the courts may be held and the county officers maintained, as required by law, nor has any adequate provision been made therefor."   In paragraph 6 it was alleged that since the passage of the aforesaid act the county has been without any "permanent habitation for the court," or place "other than temporary quarters."   In other paragraphs it was alleged that it was the absolute duty of the respondents to erect a court-house, and that they had refused after demand to perform that duty; also that a continuing tender of a donation of $26,000 had been made by certain citizens, with which to erect a court-house at Arlington, and that said sum was "adequate and sufficient to erect a court-house in keeping with the needs" of the county, but that the respondents had refused to accept the donation, or erect a suitable court-house at Arlington or otherwise perform their duties in respect thereto as required by law.   A general demurrer to the petition was interposed.   An answer was also filed, admitting it to be the respondents' duty to provide a court-house, but alleging that they had made temporary provision for a court-house at Arlington, and that under circumstances that were stated they had not abused their discretion in failing to erect a court-house.   They denied that the proposed donation was sufficient to build a suitable

court-house, and alleged that it was offered on condition that "if the court-house should cease to be used at any time as such by the county, that the title to the same would revert back to the said citizens," and that respondents "could not accept that kind of a proposition, as more than twenty-six thousand ($26,000) would be expended in such a building, and necessarily other funds of the county would have to go into the building." In paragraphs 10, 12, 13, 14, 16, 17, 18, 19, 20, and a portion of 11, of the answer allegations were made to the following effect: In December, 1925, at an election for issue of $50,000 bonds for building a court-house at Arlington, the measure was defeated. Soon after the election a petition to the ordinary was circulated and signed by more than two thirds of the qualified voters of the county, for the call of an election for removal of the county-site from Arlington, which the ordinary would call "as soon as the five-year limit for calling such election has expired on or about the —— day of February, 1927." Respondents have already provided a suitable place for holding all the courts for the year 1926, have prepared suitable vaults for holding the records, and have prepared offices for the county officers, none of whom have made any complaint. If the county-site should be removed, a court-house at Arlington would be useless. In these circumstances respondents deem it unwise to begin the construction of a court-house until after the result of the election. If the result should be against removal, preparations would at once be commenced for building a court-house at Arlington. The proposed donation of $26,000 was not declined finally, but action with reference thereto was postponed pending the result of the proposed election to remove the county-site. The county has no lot at Arlington on which to build a court-house, and a suitable lot will cost $8,000. The county has a suitable court-house lot at Morgan, the old county-site, and a suitable jail already constructed at Morgan. It would cost at least $100,000 to construct and equip a suitable court-house and jail at Arlington. Having on hand the lot and jail at Morgan, a suitable court-house could be erected on the lot at a sum not exceeding $26,000. In view of the fact that more than two thirds of the qualified voters have signed the petition to the ordinary for the call of an election for removal of the county-site from Arlington, the respondents "deemed it unwise, bad judgment and waste on their part, to accept the proposition from the

Arlington people, at least until after the election is had on this matter. . . It would hurt no one to wait until after this matter is settled." The judge overruled the demurrer, struck the above-stated parts of the answer, and granted a mandamus absolute. Error was assigned on each of these rulings.

*A. L. Miller,* for plaintiffs in error.

*H. A. Wilkinson* and *J. M. Cowart,* contra.

ATKINSON, J. This is a suit by citizens and taxpayers of Calhoun County against the board of commissioners of roads and revenues of that county, for the writ of mandamus to compel the respondents to erect a court-house at Arlington, the new county-site. The exception is to a judgment overruling a general demurrer to the petition, and striking portions of the answer of the respondents, and granting a mandamus absolute. There was no contention by the respondents that they did not have authority to erect a court-house, or that the authority formerly devolving upon the justices of the inferior courts, and latterly upon the ordinaries of the counties when sitting for county purposes, does not now devolve upon them; nor that mandamus was not an available remedy for official inaction with reference to a public duty devolving upon officials. But it was contended by them that they had a discretion as to whether they would "erect" a court-house, and that under the facts and circumstances of the case they had not abused their discretion. The controlling question of law is as to this discretion. It is provided in the Civil Code (1910), § 400: "It is the duty of the ordinaries to erect or repair, when necessary, their respective court-houses and jails, and all other necessary county buildings, to furnish each with all the furniture necessary for the different rooms, offices, or cells, and to procure a fire-proof safe, or safes, sufficient to hold at least all the minute-books and books containing records of judgments, books of officers' bonds, all recognizances, the bonds of administrators and guardians, the record of wills and of appraisements and sales, unless the court-house has a fire-proof vault; such books and papers, and all others that can, must be placed in such safes or vaults at night, or when the officers are absent."

The case of *Commissioners* v. *Porter Manufacturing Co.,* 103 *Ga.* 613 (30 S. E. 547), concurred in by all the Justices, involved authority and discretion of the commissioners to levy a tax to build

a new court-house in Habersham County. The county had an old court-house, and the commissioners determined to build a new one. When a special tax was levied to build the new court-house, an injunction was sought to prevent collection of the tax, one of the grounds of complaint being that a new court-house was not needed, and that in the circumstances it was an abuse of discretion to build the new court-house. The opinion in that case deals at length with the subject of discretion of the commissioners as to county affairs coming under their administration. Quoting from and paraphrasing what is now § 400 of the Civil Code, the opinion contains the following: "It is the duty of the county authorities having jurisdiction of county matters 'to erect and repair, when necessary, their respective court-houses and jails and all other necessary county buildings,' furnishing each of the buildings with such furniture and appliances as are necessary to accomplish the ends for which they were erected, and to preserve the public records and property which are required to be there kept. There is not, and never has been, any general law of this State, undertaking to determine when public buildings in the various counties shall be erected, and what character of buildings are to be built, or what their cost shall be. From necessity, no general law dealing in matters of detail in regard to these subjects could be satisfactory to the people of the different counties. The necessities of the various counties in regard to these matters are to be determined by the peculiar conditions surrounding each county; and therefore the sound judgment of the county authorities in each case must be relied upon to provide the public with proper buildings on the one hand, and to protect the taxpayer from useless and unnecessary burdens in regard to such matters on the other. While the power of the county authorities to levy taxes for certain purposes is limited as to amount to be levied, and as to others the power is dependent upon a recommendation of the grand jury (Political Code [1895], §§ 397, 399), still, in reference to the duty of providing the county with public buildings whenever in the judgment of the county authorities public buildings are needed, the right to levy a tax sufficient to carry into effect such purpose is unlimited as to amount, and requires no action by the grand jury. Political Code, § 395. This duty, however, is to be discharged under the revision of the judge of the superior court; and if the tax be an exorbitant tax,

or an unnecessary tax, a taxpayer has a right to complain to the judge by application for injunction against the alleged wrongful levy. Political Code, § 396. The discretion vested in the county authorities must be from the nature of the case a broad one, and therefore the reviewing power of the judge of the superior court must be exercised with caution, and no interference had unless it is clear and manifest that the county authorities are abusing the discretion vested in them by law. See *Barlow* v. *Ordinary of Sumter County*, 47 *Ga.* 639; *Waller* v. *Perkins*, 52 *Ga.* 233. The matter is left in the first instance to the discretion of the county authorities, to be controlled only by the discretion of the superior court to be exercised within limits. This discretion is to be wisely and cautiously exercised by the county authorities, and the judge of the superior court in dealing with their action must exercise that wisdom and caution which is required of those whose conduct is under review." The trial court had enjoined collection of the tax, holding in effect that the commissioners did not have a discretion to act in the matter of levying the tax to build the new court-house; and the judgment was reversed.

In the case of *Anderson* v. *Newton*, 123 *Ga.* 512, 521 (51 S. E. 508), the trial court refused to interfere with the discretion of the commissioners in determining to build the new court-house, and that judgment was affirmed. It was said in the opinion: "Equally clear is it that the court correctly held that the board of county commissioners was vested with discretionary power with respect to deciding whether or not the erection of a new court-house was a present and urgent public necessity, and, if so, upon what site it should be built. The evidence authorized, if it did not demand, the further conclusion that the commissioners were acting within the powers conferred upon them by law, in taking the steps which they pursued in carrying out their intention of providing the county with a suitable court-house by letting out the contract for the erection thereof to the Winder Lumber Company. Indeed the proposed tax was not shown to be a burden which they could not lawfully impose upon the property owners of the county, nor was it shown that the court could properly, for any other reason, interpose and enjoin the carrying out of the project upon the idea that the county authorities were not acting wholly within the scope of the discretionary powers expressly conferred upon them by law.

'The discretion vested in the county authorities must be from the nature of the case a broad one; and therefore the reviewing power of the judge of the superior court must be exercised with caution, and no interference had unless it is clear and manifest that the county authorities are abusing the discretion vested in them by law.'" In *Gaines* v. *Dyer,* 128 *Ga.* 585 (58 S. E. 175), the trial court refused to enjoin levy of a tax and making a contract to build two bridges across the Chattahoochee river, one on the site of a public road and the other on the site of a proposed public road. It was held, under application of the above-quoted principles from the cases cited, that the commissioners were acting within their discretion as related to the first bridge; but that there was an abuse of discretion relatively to the second bridge, because the county did not have authority to levy a tax and contract to build a bridge that was not a part of an existing public road. In *Dyer* v. *Martin,* 132 *Ga.* 445, 450 (64 S. E. 475), a county having two farms proceeded to sell one of them. A judgment enjoining the commissioners from making the sale was reversed. It was said: "When the commissioners ordered the sale of the pauper farm, they exercised an administrative act; and the courts have no authority to inquire into the expediency of their action, unless it is made to appear that they either exceeded their powers under the law, or in the exercise of that power there was a manifest abuse of discretion. When their action within the scope of the powers conferred on them by law is sought to be restrained by a complaining taxpayer, the question is, not whether the court or other taxpayers may have honestly differed with the commissioners as to the wisdom of their course, but whether that course of action is so palpably against the best interest of the county as to amount to an abuse of their discretion. We are aware that a judge of the superior court in passing upon an application for interlocutory injunction is also vested with a discretion, and this court has repeatedly held that his discretion upon the facts will not be disturbed unless it is abused. But it must also be borne in mind that a court of equity will not interfere with the administrative action of the governing officials of a county within the scope of the powers delegated to them by the law, unless the act complained of is arbitrary, and amounts to an abuse of discretion." See also *Odom Realty Co.* v. *Mayor &c. of Macon,* 144 *Ga.* 96 (3) (86 S. E.

243); *Tietjen* v. *Mayor &c. of Savannah,* 161 *Ga.* 125 (6) (129 S. E. 653).

Each of the foregoing cases involved injunctive relief to prevent administrative action, while the case under consideration is a mandamus proceeding to compel administrative action.  Both classes of proceedings involve the exercise of discretion upon the part of the administrative officers, and upon reason the foregoing principles are applicable whether the proceeding be of one kind or the other. Similar principles were applied in State ex rel. Matheny *v.* County Court, 47 W. Va. 672 (9) (35 S. E. 959), which was a mandamus proceeding to compel the administrative officers of the county to build a new court-house.  The trial court rendered a judgment awarding a writ of peremptory mandamus compelling the county officials to build a new court-house.  On review that judgment was reversed.  Several reasons were stated in the opinion by Brannon, Judge, including among them: "It seems to me that the county court would not be bound to build a new court-house at Oceana, if for no other reason, while the relocation of the county-seat was not only in contemplation, but a petition had already been signed, ready to be presented to the county court, for a vote of the people on the removal of the county-seat.  It seems to me that the county court had, under such particular circumstances, discretion to postpone for a reasonable time action on the matter."  These suggestions by Judge Brannon are replete with sound practical judgment which the administrative officers of the county were expected to exercise, and, owing to the similarity of the cases, are peculiarly applicable to the case under consideration.  If it should be attempted to avoid the force of the comparison with the above and several of the other foregoing decisions by the statement that each of them had reference to the building of "a new court-house" in instances where the county had an old court-house, the reply would be that the several decisions did not recognize any such distinction. Moreover such distinction would not give due weight to the fact, as alleged in the portion of the answer which was stricken, that the county authorities had *provided* a court-house by leasing and equipping a building that was suitable for the purpose.  According to the portion of the answer that was stricken, it was a matter of serious consideration as to whether the newly created county-site at Arlington would not be removed at an election for such

purpose. If in the face of such probability the respondents should build a new court-house in Arlington and the county seat should be removed as the result of the election, the court-house would no longer be serviceable and would probably result in great financial loss.

In the language of Mr. Justice Cobb in *Commissioners* v. *Porter Manufacturing Co.,* supra, these respondents "must be relied upon to provide the public with proper buildings on the one hand, and to protect the taxpayer from useless and unnecessary burdens in regard to such matters on the other." In the circumstances the respondents would seem to abuse their discretion if they should ignore the probability of a change in the county-site and proceed to build a court-house, in lieu of carrying out for the time being their policy of providing a court-house by lease of a building suitable for the purpose. It is insisted that § 400, quoted above, is mandatory as compelling the respondents to "build" a court-house "forthwith." The statute should not be so construed, and was not so construed in any of the prior decisions of this court. In the case just cited it was construed as relating to a duty to "provide." The word "provide" is used all the way through the opinion, the manner of providing being left to a sound discretion on the part of the commissioners. A construction of the statute as mandatory to "build" a court-house "forthwith" would in effect strike the words "when necessary" as they are used in the statute, which can only be done by legislative enactment. A construction of the statute that would make it mandatory upon the respondents to "build" a court-house would compel them to construct a court-house building, even though they might be able to obtain by purchase or lease or donation a building already constructed that would be the counterpart of such a court-house as they would build if the county did not have one. The Civil Code of 1910 was regularly adopted by the legislature, and consequently § 400 thereof has the force of a statute. *Central of Georgia Ry. Co.* v. *State,* 104 *Ga.* 831 (31 S. E. 531, 42 L. R. A. 518) ; *Lee* v. *Rogers,* 151 *Ga.* 838 (108 S. E. 371) ; *O'Berry* v. *State,* 153 *Ga.* 644, 647 (113 S. E. 2). To that section of the code there is a marginal note: "Act 1796, Cobb, 182," thus indicating the first legislation on the subject of the duty of county authorities to build or provide court-houses. The section of the code prescribed a duty "to erect or repair, when neces-

sary, their respective court-houses and jails," etc. This exact language as contained in § 400, supra, first appeared in the Code of 1861, § 469. It has since so appeared in each of the succeeding codes. Those of 1861 and 1895 were each also regularly adopted by the legislature, giving the section cited the effect of a statute. The Code of 1895 was in effect at the time of the decision in *Commissioners* v. *Porter Manufacturing Co.*, supra; and consequently in rendering the opinion in that case this section must have been construed as a statute. The act of 1796 (Cobb's Digest, 182) did not contain the words "when necessary." The language employed in that act was, "shall cause to be erected and kept in good repair (or where the same shall be already built), shall maintain and keep in good repair, at the charge of such county, one good and convenient court-house," etc. The language was changed when the first code was adopted, and the words "when necessary" were employed, and, as indicated above, have continued to be used in each of the succeeding codes, thus making a statutory change in the original law on the subject. This change was no doubt made in order that the statute might not be considered mandatory, and in order that the administrative officers of the county might have a discretion in the matter of building a court-house or providing one by other means. This was evidently in the mind of the court in the case of *Commissioners* v. *Porter Manufacturing Co.*, supra, when Judge Cobb used the word "provide," etc.

It is insisted that the County of Calhoun has no court-house; that it has been without one since 1923, at least; that it will never have one if the mere circulation and signing of a petition by a sufficient number of voters to authorize an election upon the subject of removal is a good ground for not building a court-house at the new site; that the existence of such petition furnishes no valid reason for the failure of the defendants to build a court-house at Arlington, as required by law. This is not an accurate statement of the contentions of the respondents as set out in the portions of their answer which were stricken. The answer does not indicate that the respondents were trifling, as this insistence seems to indicate.

*Judgment reversed. All the Justices concur, except Beck, P. J., and Hines, J., who dissent.*

HINES, J., dissenting. 1. The petition as amended set forth

a cause of action, and the court properly overruled the demurrer. In 1922 an election was held in Calhoun County, upon the question of the removal of the county-site from Morgan to Arlington, and resulted in favor of such removal. On July 27, 1923, the legislature passed an act to remove the county-site of that county from Morgan to Arlington. Since the passage of said act the county commissioners have not erected a court-house at the new county-site. The county is without a court-house. The county commissioners have made no adequate provision for buildings in which the courts of the county can be held, where the public offices can be located, and in which the public records can be stored and safeguarded. This state of affairs existed for more than two and a half years after the legislature had passed the act for the removal of the county-site, and for more than four years after the election had been held upon the question of the removal of the county-site from Morgan to Arlington. The buildings of a county are to be erected and kept in order and repaired at the expense of the county, under the direction of the ordinary, who is authorized to make all necessary contracts for that purpose. Civil Code (1910), § 399. County commissioners, with power to levy taxes, have and can exercise the power conferred under this section of the Code upon the ordinary, when such officers are authorized to levy taxes. *Dunn* v. *O'Neill,* 144 *Ga.* 823 (88 S. E. 190). In *Matthews* v. *Hussey,* 148 *Ga.* 526 (97 S. E. 437), it was held that the board of county commissioners with jurisdiction over county matters and county finances was authorized to contract for the building of a county court-house under the above section of the Code. The county commissioners of Calhoun County are invested with the power to levy taxes in that county. Acts 1877, p. 248; Acts 1908, p. 277. It is the duty of the ordinaries to erect or repair, when necessary, their respective court-houses and jails and all other county buildings. Civil Code (1910), § 400. This section was codified from the act of Feb. 21, 1796 (Cobb's Digest, 182), which declared that "the justices of the inferior courts of every county within this State, in their respective counties, shall cause to be erected and kept in good repair (or where the same shall be already built), shall maintain and keep in good repair, at the charge of such county, one good and convenient court-house of stone, brick, or timber, and one sufficient jail." This act sheds light upon the

above construction of these sections of the Code. When control of county matters is vested in county commissioners, and they are authorized to levy taxes, this duty rests upon them.

All official duties shall be faithfully performed, and the writ of mandamus may issue to compel the due performance of such duties, if there be no other specific legal remedy. Civil Code (1910), § 5440; *Harrell* v. *Williams*, 154 *Ga.* 632 (115 S. E. 97); *Bryant* v. *Board of Education of Colquitt County*, 156 *Ga.* 688 (119 S. E. 601). In *Polk* v. *James*, 68 *Ga.* 128, it was said: "The duty assigned to these commissioners was one in which the public was interested; it involved the laying out of town lots, their sale, the collection of the money for the same, the building of a court-house and jail, the payment of the funds collected to the builders thereof; and our judgment is that there is no other specific legal remedy for their failure to discharge this statutory duty, and that mandamus lies to enforce it. 4 *Ga.* 26, 116; 5 Ib. 522; 12 Ib. 170; 26 Ib. 676." In *Board of Commissioners of Jasper County* v. *Persons*, 155 *Ga.* 277 (116 S. E. 538), it was held that mandamus would lie against county commissioners to require them to perform their official duty in making the jail safe and sanitary, and to put it into a condition which would not jeopardize the lives or health of the prisoners. The petition in this case alleges the failure of these county commissioners to discharge the public duty resting upon them to erect a court-house for the county at the new county-site. This duty is statutory and mandatory, as will more fully appear when we come to consider the discretion vested in these officers in the matter of erecting this court-house. As we have seen above, mandamus is the proper remedy to stop official inaction and to require the performance of an official duty due to the public.

2. It is insisted by counsel for the county commissioners, that they are vested with a discretion as to the time when they will erect a court-house at the new county-site, that their discretion in this matter should not be interfered with unless they have abused the same, and that the petition sets out no facts to show any abuse of the discretion vested in them, for which reason the petition set forth no cause of action; and that the court erred in making the mandamus absolute. When a county-site is removed by public vote and legislative enactment, what discretion has the ordinary, or the county commissioners in case they have control of county

affairs, as to the time when they will start to erect a court-house at the new county-site? Can they indefinitely postpone the building of a court-house at such site? As we have seen, it is the duty of these officers to erect or repair, when necessary, the court-house and jail, and all other county buildings. The statute making it the duty of these officers to erect a court-house at the county-site, when necessary, is mandatory, and not wholly discretionary. Where the mandatory duty is imposed by statute upon officers to erect public buildings, or to keep them in repair, they may be compelled to perform these duties by mandamus. *Polk* v. *James,* supra; *Board of Commissioners of Jasper County* v. *Persons,* supra; People *v.* LaSalle County, 84 Ill. 303 (25 Am. R. 461); People *v.* Board of Suprs., 294 Ill. 579 (128 N. E. 645); 38 C. J. 756, § 385. Ordinarily the writ of mandamus is a remedy for official inaction. It is the means of putting public officers in motion. *City of Atlanta* v. *Wright,* 119 *Ga.* 207 (45 S. E. 994). So an officer who is vested with a discretionary power may, in a proper case, be compelled by mandamus to exercise such discretion. *Wood* v. *Board of Education,* 137 *Ga.* 808 (74 S. E. 540). While mandamus does not lie "to a public officer who has an absolute discretion to act or not, unless there is a gross abuse of such discretion," this remedy "is not confined to the enforcement of mere ministerial duties." Civil Code (1910), § 5441; *Wood* v. *Board of Education,* supra. But their discretion as to the character and style of building to be erected, or the method of repairs, will not be interfered with or controlled by mandamus. State *v.* Baker County, 22 Fla. 29; People *v.* LaSalle County, supra; Broaddus *v.* Essex County, 99 Va. 370 (38 S. E. 177); People *v.* Board of Suprs., supra. So I am of the opinion that it is the mandatory duty of the ordinary or the county commissioners, as the case may be, when the removal of a county-site has been legally effected, to build a court-house at the new county-site, and that they are not vested with a discretion to build or not to build as they may see fit. If the county-site is removed, such officer or officers should proceed with reasonable dispatch to erect a court-house at the new county-site. Upon their failure to do so, mandamus is the remedy to compel them to discharge this public duty.

There is nothing to the contrary of the above holding in *Commissioners* v. *Porter Manufacturing Co.,* 103 *Ga.* 613, and in

*Anderson* v. *Newton,* 123 'Ga. 512 (supra), when considered in view of the facts and questions of law involved in those cases. In the case first cited, Justice Cobb, who delivered the opinion of the court, said: "There is not, and never has been, any general law of this State undertaking to determine when public buildings in the various counties shall be erected, and what character of buildings are to be built, or what their cost shall be." He clearly overlooked the act of 1796. He further said: "The discretion vested in the county authorities must be, from the nature of the case, a broad one; and therefore the reviewing power of the judge of the superior court must be exercised with caution, and no interference had unless it is clear and manifest that the county authorities are abusing the discretion vested in them by law." In that case the county commissioners had levied a tax to build a new court-house. Clearly, when the county already has a court-house it may become necessary to erect a new one. In such a case the proper county authorities are to pass upon the necessity and expediency of building the new court-house; and in determining this question a broad discretion is vested in the county authorities having the affairs of the county in their charge and control. The question when the county authorities should build a court-house, if the county had none at the county-site, was not involved in that case, and was not up for decision. Under our law the proper county authorities must build a court-house whenever it is necessary, and it is unquestionable that when a county has no court-house the necessity exists for the erection of one. In that case the sole question for decision was whether the county commissioners had abused their discretion in levying a tax for the building of a new court-house. In *Anderson* v. *Newton* it was held: "County commissioners have a broad discretion in passing upon the necessity of erecting suitable buildings for county purposes and selecting an appropriate site therefor; and the reviewing power of the judge of the superior court should be exercised with caution, and no interference had unless it be manifest that the county authorities are abusing the discretion with which they are vested, or that the tax which they propose to levy to meet the cost of construction is exorbitant and will therefore impose an unauthorized hardship upon the taxpayer." Justice Evans, who delivered the opinion of the court, quoted with approval the language of Justice Cobb in

*Commissioners* v. *Porter Manufacturing Co.,* above set out. In that case the proceeding was brought to enjoin the county commissioners of Morgan County from erecting a new court-house; and the sole question involved was whether these officers had abused their discretion in determining to build a new court-house. This court properly held that their discretion in this matter should not be interfered with by the judge of the superior court, unless it was abused. In the cases cited and like cases the county-site had not been removed by popular vote and legislative enactment.

3. In the petition in this case the plaintiffs alleged that the County of Calhoun was without a court-house, and that no adequate provision had been made for the holding of courts in the county. In their answer the defendants set up that suitable provision had been made for the holding of all of the courts of the county for the year 1926, that a fireproof vault had been constructed for preserving the records and books of the county, and that suitable offices had been provided for all of the county officers during that year. In these circumstances the defendants insist that an issue of fact was thus raised by the answer of the defendants, which should have been submitted to a jury for solution; and that the trial judge erred in not submitting this issue to a jury, and in making the mandamus absolute. Whether the judge erred in not submitting this issue to the jury depends upon the proper answer to the question whether the defendants would be excused from building a new court-house by reason of the fact that they had made suitable provision for the holding of courts in other buildings or place at the new county-site. We have seen that the duty of these officers to erect a court-house is mandatory, and not discretionary. They can not substitute for the performance of this duty the making of other suitable provisions for the holding of the courts and for the accommodation of the public officers and the public records at other buildings at the new county-site. The making of such provisions does not excuse them from performing this public duty and from building a court-house at Arlington. Under our statute it is their duty to build a court-house at the new county-site, and not to make other provisions in lieu thereof.

4. But it is insisted by the defendants that the petition as amended alleges that a demand had been made upon them for the erection of a court-house at Arlington, that in their answer they

denied this allegation, that thus an issue of fact was raised which should have been submitted to a jury, and that for this reason the trial judge erred in making the mandamus absolute. The petition as amended does make such allegation. In their answer the defendants deny this allegation. Thus the issue of demand vel non was raised by the answer of the defendants. But a formal demand is not always necessary in order to entitle parties to a mandamus absolute. If the conduct and action of officials is equivalent to a refusal to perform a public duty imposed upon them by law, it is not necessary to go through with the useless formality of demanding its performance. Anything showing that the defendants do not intend to perform their duty in this matter is sufficient to warrant the issuance of a mandamus absolute. *Coffee* v. *Ragsdale,* 112 *Ga.* 705, 710 (37 S. E. 968); *Southern Railway Co.* v. *Atlanta Stove Works,* 128 *Ga.* 207, 221 (57 S. E. 429). Where facts appear which substantially amount to a refusal, no demand is necessary. Where the conduct of the respondents is such that it can be conclusively implied therefrom that they would have refused to comply with the demand, such demand is unnecessary. In State *v.* Board of Hudson County, 35 N. J. L. 269, 278, it was said: "The only remaining question is as to the demand to be admitted. It is clear, from the official action of the board, that they did not intend to admit the relators till a decision was made of their right. Any formal demand was unnecessary, for the facts substantially amounted to a refusal." In Attorney-General *v.* Boston, 123 Mass. 460, 477, it was ruled: "But where a municipal corporation or board has distinctly manifested its intention not to perform a definite public duty clearly required of it by law, no demand is necessary before applying for the writ" of mandamus. A demand is unnecessary where the court is convinced that it would be unavailing. Hilton *v.* Grand Rapids, 112 Mich. 500 (70 N. W. 1043). A demand is unnecessary where it is evident that the respondents would refuse to comply with the demand if one were made. Austin *v.* Cahill, 99 Tex. 172 (88 S. W. 542); 38 C. J. 694, § 266. It is clear from the action and conduct of the respondents that they would not have complied with the demand of the plaintiffs for the building of this court-house if one had been made, as alleged by them in their petition. Furthermore, where the duty sought to be enforced is of a public nature, affecting the people at large, and

there is no one specially empowered to demand performance, no demand is necessary as a condition precedent to the issuing of a writ of mandamus to compel performance. 38 C. J. 576, § 50, note 28, and cit. In these circumstances the law requiring performance of the duty stands as a continuing demand. State *v.* Curtis, 210 Ala. 1 (97 So. 291); Robertson *v.* Derrick, 113 Ark. 40 (166 S. W. 936); People *v.* Board of Suprs., 223 Ill. 187 (79 N. E. 123); State *v.* Weld, 39 Minn. 426 (40 N. W. 561).

5. The defendants further set up in their answer, that, since the removal of the county-site from Morgan to Arlington by public vote and the act of the legislature, a petition had been circulated in the county, and signed by the qualified voters thereof, for the removal of the county-site from Arlington; that upon information and belief said petition was signed by two thirds of the qualified voters of the county; that said petition would be presented to the ordinary for action thereon as soon as the five-year period from the time of the election which resulted in the removal of the county-site from Morgan to Arlington had elapsed; and that for this reason they did not think it fair and just to the county, and to those persons who had tendered a fund for the building of the court-house at Arlington, to build the court-house at Arlington until the question of the removal of the court-house from that place could be settled by a popular vote. Did this fact furnish a good defense to the mandamus proceeding? I do not think so. If the existence of such a petition furnished a sufficient reason for the county authorities' refusal to build a court-house after the county-site had been removed in the manner provided by our law, then no court-house would ever be built in a county where the county-site had been removed. The refusal of the county authorities to build a court-house for this reason would be tantamount to a veto of the election and the act of the legislature by which the county-site was changed. After considerable research we have been unable to find any decision involving the point raised in this case. In the case of State *v.* County Court, 47 W. Va. 672 (35 S. E. 959), the Supreme Court of West Virginia held that "A county court will not be compelled by mandamus to build a new court-house pending a proceeding to remove the county-seat." The question there involved was different from the one involved in the instant case. In the case cited the county already had a court-house, and

the proceeding for mandamus was brought to compel the county court to build a new court-house. By reason of the pendency of the petition for the removal of the court-house, the Supreme Court of West Virginia held that the pendency of the proceeding to remove the court-house furnished a sufficient reason to refuse the mandamus until the question of removal was settled. The situation in the case under consideration was different. The County of Calhoun has no court-house. It has been without one since 1923, at least. It will never have one if the mere circulation and signing of a petition by a sufficient number of voters to authorize an election upon the subject of removal is a good ground for not building a court-house at the new site. The existence of such petition furnishes no valid reason for the failure of the defendants to build a court-house at Arlington, as required by law.

6. So I am of the opinion that the trial judge did not err in overruling the demurrer to the petition, in striking paragraphs 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, and 20 in the answer of the defendants, setting up the above excuses for not building a court-house at Arlington, and in making the mandamus absolute. In my opinion the facts show abuse of official discretion. Mr. Presiding Justice Beck authorizes me to say that he concurs in this dissent.